Lanigan v. Bradley and Currier Co.

---

JOHN LANIGAN'S ADMINISTRATOR

*v.*

THE BRADLEY AND CURRIER COMPANY, LIMITED; VEZZETTI BROTHERS and EMIL TIETJE.

1. A valid equitable assignment may be made of a portion of the contract price of a building contracted to be erected by the assignor, but not yet erected, and such assignment need not be written nor accompanied by any transfer of the contract itself.

2. A was minded to employ B, a builder, to erect a house to cost $5,800, but was short $800 of cash to pay for it. C agreed with A and B that he would furnish B with $800 worth of building materials to use in his business, and take his pay for it in A's notes on time for $800 as part of the contract price of A's house. On the strength of that arrangement A and B signed the contract for building the house, and B built it, and C delivered the building materials to B according to his contract. Before A had given his notes to C for the $800, creditors of B served notices upon A, under the third section of the Mechanics' Lien law, and A paid the money into court, and filed his bill of interpleader. *Held*, that the arrangement between A, B and C amounted to an assignment by B to C of so much of the contract price, and that C was entitled to the fund.

---

Bill of interpleader. Heard on the pleadings and oral proofs.

*Mr. Collins*, for Bradley and Currier Company, Limited.

*Mr. Samuel A. Besson,* for Vezzetti Brothers.

*Messrs. Nivens & Minturn,* for Emil Tietje.

PITNEY, V. C.

This is a bill of interpleader. The fund in court represents the balance of the contract price agreed to be paid by Lanigan for the building of a house on his land by Conroy. The contest is between the Bradley and Currier Company, Limited, which claims under an alleged assignment by Conroy, on the one side, and Vezzetti Brothers and Tietje, who severally claim under notices served upon Lanigan under the third section of the Mechanics' Lien law. The claims of these last are sufficient to take the whole fund if they prevail over that of the Bradley and Currier Company, Limited. This company was made defendant because it also served a notice under the same section of the statute for a small sum, but at a later date than that of Vezzetti Brothers and Tietje.

The claim the Bradley and Currier Company relies upon, viz., an assignment from Conroy, is set up by a cross-bill.

The facts are undisputed and are as follows: Lanigan was the owner of a lot, upon which he was minded to build a house, according to certain plans and specifications. Conroy offered to build it for $5,799. Lanigan was satisfied with this offer, but had no ready money and could raise upon mortgage no more than $5,000, and his project was likely to be abandoned for lack of funds. In this situation of the affair one Evans, the sales-agent of the Bradley and Currier Company, who had made a bid to Conroy for the sash and blinds for the house, offered to sell to Conroy goods manufactured by the Bradley and Currier Company, such as Conroy used in his business of a builder, and to take in payment therefor the promissory notes of Lanigan on a long credit to the extent—not to exceed $1,000—to which the $5,000 to be borrowed by Lanigan on mortgage should fall short of paying Conroy his contract price. Conroy communicated this offer to Lanigan, and he agreed to the arrangement, and the building contract was signed and the building erected in pursuance of

it. This arrangement was made irrespective of whether the Bradley and Currier Company obtained the contract for furnishing the sash and blinds for Lanigan's house or not; but it did obtain the contract and furnished materials, which went into the house, to the extent of $385; and farther, while the house was being erected, furnished other goods to Conroy for his use in other buildings to the extent, in all, of about $1,000. The arrangement so made between Evans, Conroy and Lanigan was never repudiated by either of the parties to it, nor was there any dispute as to the length of credit to be given to Lanigan; the only objection made by Lanigan to carrying it out and giving his notes to the Bradley and Currier Company was that he claimed a deduction for upward of $100 from the contract price for an alleged incompleteness in the contract work. The parties—Conroy, Lanigan and Evans, representing the Bradley and Currier Company— met for the purpose of adjusting this difference, and did finally agree upon an allowance, but before the notes were actually given to the Bradley and Currier Company notices were served by Vezzetti Brothers and Tietje, under the third section of the Mechanics' Lien law, and thereupon Lanigan, under the advice of counsel, filed his bill and paid into court the amount for which, but for the notices, he was ready to give his notes to the Bradley and Currier Company.

The sole question is whether or not what took place between the Bradley and Currier Company and Conroy and Lanigan amounted to an assignment by Conroy to the Bradley and Currier Company of so much of the contract price for building the house as the proceeds of the $5,000 mortgage loan should fall short of paying. This is the only question, because it is well settled that if Conroy did so assign such balance before the notices were served, the assignee takes in preference to the claimants under notice. The third section of the statute in question gives no lien or right in the nature of a lien, but simply a right of stoppage. It is essential to this right that there should be money due from the owner to the contractor on account of the contract at the time the notice is served. The section in question does not interfere with the right of the contractor to assign sums due him on the

contract at any time before the notices are served. *Craig* v. *Smith, 8 Vr. 549; Chosen Freeholders* v. *Lindsley, 14 Stew Eq. 189* (at *p. 195*); *Kirtland* v. *Moore, 13 Stew. Eq. 106; Burnett* v. *Jersey City, 4 Stew. Eq. 341* (at *p. 351*).

The effect of what took place between Evans, Conroy and Lanigan was this: Lanigan says to Conroy, " I am unable to pay you cash for the whole of your contract price, but I must have credit for a certain part of it." Evans, for the Bradley and Currier Company, says to Conroy, " I will furnish you building materials to the amount of that certain portion and take my pay in Lanigan's notes on time." Conroy accepts the proposition and agrees that the portion of the contract price in question shall be paid by Lanigan to the Bradley and Currier Company and that he will take his pay from them in materials.

It seems to me impossible to escape the conclusion that this arrangement amounted to an assignment by Conroy to the Bradley and Currier Company of the stated portion of the contract price to become due to him from Lanigan. Under it the Bradley and Currier Company delivered to Conroy the materials agreed upon. To that extent Conroy was paid, and it is admitted that the amount so paid, when added to the cash received by him from the mortgage loan, was sufficient to pay him in full. After having thus received the full amount of his contract price—partly in cash from Lanigan and partly in materials from the Bradley and Currier Company on the strength of Lanigan's credit—it is impossible to say that anything was owing to him from Lanigan.

It was not essential to the validity of the transaction in equity that Lanigan should assent to it. If, in place of what took place, Conroy had given the Bradley and Currier Company a written order on Lanigan for so much of the contract price when earned, it would have operated as an assignment in equity, without Lanigan's consent, which he would have been bound to respect after notice of it. *Kirtland* v. *Moore, 13 Stew. Eq. 106; Superintendent* v. *Heath, 2 McCart. 22; 3 Pom. Eq. Jur.* §§ *1280, 1283.* If, however, such a written order had been given and accepted by Lanigan the affair would have reached the stage of novation and Lanigan would have been liable at law to the Bradley and Currier

Company. *1 Pars. Cont. 217.* But the law does not require that such an assignment should be in writing or assume any particular form. *2 Story Eq. Jur.* § *1047; 1 Pars. Cont. 228 ; 2 Lead. Cas. Eq. (4 Am. ed., 1877) 1641 et seq. ; Tibbits* v. *George, 5 Ad. & E. 107, 31 Eng. Com. L. 543 ; Heath* v. *Hall and Porter, 4 Taunt. 326.* These last cases go the length of holding that an assignment of a debt by parol and without the delivery of its instrumental evidence, if there be any such, is good.

The result is, that we have a complete appropriation by Conroy of a specific portion of a debt, to grow due to him from Lanigan for work to be done, to the payment, to the Bradley and Currier Company, of a debt to grow due to them from Conroy for goods to be sold. The arrangement was executory, but was afterwards executed by all the parties except Lanigan. Conroy did his work for Lanigan, so that certain moneys came due from Lanigan. The Bradley and Currier Company delivered the goods to Conroy, so that certain moneys came due to it. This gives it the right to have the appropriation carried out. Lanigan waived the right, if any, which he had to withhold payment until the contract was fully completed, and also his right to have time for payment, by paying into this court the sum he admitted to be due. That money Conroy had, in effect, directed him to pay to the Bradley and Currier Company in payment of the goods furnished by it to him, and it seems clear enough that it has a right to follow it into this court. *3 Pom. Eq. Jur.* § *1280.*

The case is clearly distinguishable from that class in which the debtor promises to pay his creditor out of a particular fund when or as soon as he shall receive it. Such mere promise does not amount to an assignment or appropriation. The distinguishing feature of this class is that the party does not part with the control of the fund, but his promise is consistent with its being paid to and received by him. *3 Pom. Eq. Jur.* § *1283, n. 2.* The American annotator of *2 W. & T. Lead. Cas. Eq.* (at *p. 1644*), says :

"A covenant to pay a debt with the proceeds of goods when sold, or out of an outstanding demand when collected, will not operate as an assignment, because it implies that the covenantor is to retain the control over the fund and that more remains to be done on his part to make the transfer effectual,"

citing several of the cases relied upon by the defendants herein in their briefs.

The test laid down in *Trist* v. *Child, 21 Wall. 441,* is, Does the contract or arrangement in question authorize the depositary of the fund to pay it directly to the creditor or party claiming as assignee without the further intervention of the debtor or party originally entitled to it?

*Eib* v. *Martin, 5 Leigh. 132,* and *Ford* v. *Garner, 15 Ind. 298,* and other cases cited by defendants, are instances of the class of promises which do not authorize the depositary of the fund to pay it directly to the promisee, and so do not amount to an assignment.

In the case in hand the precise terms of the arrangement were that Lanigan should pay directly to the Bradley and Currier Company. It seems too clear for argument that such payment would have been a complete discharge to him as against Conroy. The fact that the Bradley and Currier Company might have sued Lanigan at law does not disturb its footing in this court. It has the right to follow the fund wherever it finds it. Being made a party to the interpleader it would be barred if it did not assert its right under the assignment.

I think that Bradley and Currier Company, Limited, is entitled to the fund, and will so advise.