# MILFORD STATE BANK v. PARRISH et al.

No. 5593.   Decided December 27, 1935.   (53 P. [2d] 72.)

Rehearing denied March 27, 1936.

*Cline, Wilson & Cline,* of Milford, for appellant.

*K. C. Tanner,* of Portland, Or., and *Walter M. Critchlow,* of Salt Lake City, for respondent.

MOFFAT, Justice.

A divorce action against Charles R. Parrish, the defendant herein, as defendant in that action had proceeded to judgment. The interpleaded defendant in this action was plaintiff in the divorce action. That action forms the background of this case here for review. The cases of *Parish* v. *Parish,* 84 Utah 390, 35 P. (2d) 999, and *Parish* v. *McConkie,* 84 Utah 396, 35 P. (2d) 1001, were recently decided by this court. Certain proceedings in those cases and a writ of garnishment in the instant case furnish the controversial issues.

The facts and the order of events are: On February 2, 1931, the plaintiff in this action, the Milford State Bank, loaned to the defendant, Charles R. Parrish, $800, and took his note secured by certain building and loan stock not the stock of the Investors Syndicate involved in the issues herein. This note became due May 2, 1931. On October 14, 1931, the plaintiff, Milford State Bank, in this action was served with a restraining order in the case of *Parish* v. *Parish,* supra. On April 12, 1932, a decree of divorce was entered upon a stipulated property settlement and the testimony of the plaintiff in that case.

The defendant, Charles R. Parrish, having failed to conform to the terms of the decree as to alimony and payment of money or transfer of property as claimed by the plaintiff, was cited before the court on an order to show cause why he should not be punished for contempt. At that hearing held on January 4, 1933, certain conversations were had and transactions occurred which respondent here, plaintiff in the divorce action, contends effected an equitable assignment of a fund of $856.75, funds of defendant Charles R. Parrish, and then in the possession of Investors Syndicate, garnishee herein. The divorce action was pending in the Third district court, Salt Lake county.

On February 2, 1933, an action entitled *Milford State Bank, plaintiff,* v. *Charles R. Parrish, defendant,* was filed in the Fifth district court, Beaver county, Utah, and judgment therein taken by confession. On February 9, 1933, a writ of garnishment issued in that cause was served upon the Investors Syndicate by the Milford State Bank. The Investors Syndicate answered the writ and alleged that it held the principal sum of $835.19 and interest in the sum of $21.56, the total thereof being the cash surrender value of an installment investment certificate surrendered to it by Charles R. Parrish. That Edna Parrish, the former wife of Charles R. Parrish, claimed to be the owner and entitled to the possession of said money, and, pursuant to statute, prayed that Edna Parrish be interpleaded, and asked for an order permitting said garnishee to pay the funds in its possession into court and thereupon to be discharged from all liability.

Edna Parrish became the interpleaded defendant. Issues were made up by answer and reply and the cause was tried to the court, resulting in findings and judgment in favor of the interpleaded defendant. Plaintiff appeals and assigns error.

Appellant groups the errors assigned and argues them under three propositions:

1. That the trial court allowed the interpleaded defendant to introduce evidence taken in the case of *Parrish* v. *Parrish* then pending in the Third district court.

The general rule of evidence subject to some exceptions is that where the parties to the suit in which the findings of fact, conclusions of law, motions, orders, proceedings, and testimony of another action may be offered in evidence are not the same nor in privity, the record of the former suit may not be introduced to establish the facts upon which a judgment was rendered or order made. Appellant has cited authorities to support the general principle above stated. Respondent concedes that appellant's authorities support such general statement as an accurate statement of the law. 4 Jones Comm. on Evidence, § 1818.

The parties stipulated "that the record or any part thereof in the case of *Edna Parrish* v. *Charles R. Parrish* may be read into evidence and no objection will be raised concerning the competency of such testimony." This stipulation, when considered in connection with the allegations, admissions, and denials of the parties, and especially when it is shown that the question of an equitable assignment, alleged to have been made as a part of and intimately connected with the proceedings in the case of *Parrish* v. *Parrish* was the principal issue in the hearing on a contempt proceeding based upon the judgment in that case, put the parties in such position that the evidence affecting the main issue as offered was properly admitted.

2. Appellant contends that the proof is insufficient to support a finding that there was an equitable assignment made of the funds held by the Investors Syndicate.

The evidence relating to this primary and controlling question is brief and free from conflict. The law as to what constitutes an equitable assignment is well settled. The application of the law and the facts is sometimes difficult.

In the case of *Nickerson* v. *Hollet* (National Bank of Goldendale, Intervener) 149 Wash. 646, 272 P. 53, Tolman, J., quotes the law and cites authority as follows:

" 'In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is done the transaction is an assignment; otherwise not.' 5 C. J. 909."

" 'The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control it is fatal to the claim of the assignee.' 5 C. J. 912. See, also, *Hossack* v. *Graham*, 20 Wash. 184, 55 P. 36."

This court, speaking by Mr. Justice Thurman, in the case of *Stewart* v. *Heywood*, 62 Utah 466, 220 P. 717, 719, after quoting other authorities, refers to 1 Freeman on Executions (3d Ed.) at page 359, and quotes:

" 'It is not essential that the assignment should be perfect at law. It is sufficient if it is a good equitable assignment; and it is a good equitable assignment whenever, by its terms, the person to whom an obligation is due authorizes the payment thereof to another, either for his own use, or for that of some other person, or authorizes any one to receive or hold moneys and to apply them to any specific purpose other than for the use or benefit of the assignor.'

"Again, on page 860, the same author says:

" 'An equitable assignment may be made by parol, or by mere agreement between the debtor and creditor that the debt shall be paid to some third person.

" 'No doubt, an order made by the creditor, directing the debtor to pay the debt to some third person, is after its acceptance, a good and sufficient assignment of the amount therein directed to be paid. And, though this has sometimes been doubted, the majority of the authorities show that its acceptance is not essential to enable such an order to withdraw funds from the reach of the creditors of the drawer.'

"To the same effect is 2 R. C. L. at page 615, cited by appellant, in which it is said:

" 'The true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be assignee.' "

The trial court from the evidence found an equitable assignment. The evidence submitted to the trial court on that question in substance is:

Charles R. Parrish had been cited to appear before the court to show cause, if any he had, why he should not be punished for contempt for failure to perform or pay according to the terms of judgment and divorce decree. At that hearing before the Third district court, Salt Lake county, the parties appeared. One Pearl Miller, office manager of the Salt Lake City Branch office of the Investors Syndicate had been subpoenaed as a witness and required to bring certain records and papers, among which was a check payable to Charles R. Parrish for the sum heretofore stated. Miss Miller was called as a witness in this action. She testified as to what took place when she was in court on the former action relating to the assignment claimed by the interpleaded defendant. She testified that she went to court with the records and files; that she had the check and a letter written to send out with the check to Dr. Parrish. The check and letter were marked as exhibits. They were surrendered to the court. After the proceedings were over, she had a conversation with Judge McConkie and also heard a conversation between Mrs. Parrish's attorney, Mr. Tanner, and Judge Whittaker, attorney for Charles R. Parrish, the defendant in that action, in which the witness also participated. That she heard Mr. Tanner ask that the check be impounded; that he wanted the check given to Mrs. Parrish as a partial payment on the $2,900 judgment. That she heard Judge Whittaker say: "You can have the check, we are not trying to avoid that debt, we want to pay it, you can have it." That subsequent to this conversation she asked Judge McConkie for the check and that he told her the "check would be paid to Mrs. Parrish, that it was for Mrs. Parrish." That he told her "to deliver it to Mr. Tanner in the presence of Mr. Whittaker." That no demand prior to the serving of the writ of garnishment

had been made for the check by Dr. Parrish or any one acting in his behalf.

Mr Tanner testified that when he made the motion to impound the check, Judge Whittaker, attorney for Dr. Charles R. Parrish, said: "That is not necessary, you can have that, and we will take care of the balance of it within a few days." That under that arrangement there was no necessity of pressing the motion. That at that time he asked that Miss Miller be permitted to take the check back to the office.

Whether or not Dr. Charles R. Parrish was present at the time the various conversations referred to took place does not affirmatively appear from this record. The fact that the proceeding was upon an order issued to Dr. Parrish to appear and show cause may furnish some reason to infer that he was, and, if so, that he approved what his counsel had agreed to. The trial court was in a position to know and we may not presume he was not. The trial court could have ordered Dr. Parrish to indorse the check, the evidence of the indebtedness, or to make delivery of the fund, and had resistance been made or suggested, no doubt such an order would have been made except for the understanding arrived at by respective counsel at the time.

We are of the opinion the trial court was justified in finding that there had been an equitable assignment of the fund held by the Investors Syndicate to Mrs. Parrish. The trial court held both hearings, saw the parties, and was in better position to appreciate the situation and interpret what was presented, being thus more fully advised than we are, and having weighed and interpreted the evidence. We think we should not disturb the finding.

3. The third and last proposition submitted by appellant is:

"That a conveyance by a husband to his wife of all his property without consideration is fraudulent and void as to creditors, even though the wife does not participate in the fraud and no actual fraud on the part of the husband is shown, and the fact

that the transfer is a result of a stipulated decree does not constitute a consideration."

A discussion of the proposition above stated, in so far as this case is concerned, would be academic. An attempted attack upon the judgment in the case of *Parrish* v. *Parrish*, collateral if it may be termed an attack, can form the only basis for the proposition in this case. It is argued that a stipulated judgment whereby a husband divests himself of his property to his wife even in a divorce action is fraudulent. That such action may be made a basis of attack upon a judgment may be conceded. No such attack is made, and if it were there is not sufficient proof to show there was any fraud involved in that action. That judgment is a valid and subsisting judgment. No direct attack is made upon it. The proposition that the assignment of the fund in possession of the Investors Syndicate in partial liquidation of that judgment does not constitute a consideration needs no discussion.

The judgment of the trial court is affirmed. Respondent to recover costs.

We concur:

WILLIAM H. FOLLAND, J., EPHRAIM HANSON, J.

ELIAS HANSEN, Chief Justice (dissenting).

In this litigation the Milford State Bank and the interpleaded defendant, Edna Parrish, each claim the right to a check in the sum of $856.75 made by the Investors Syndicate in favor of Charles R. Parrish. The claim of the bank is based upon a writ of garnishment issued out of the district court of Millard county, Utah, upon a judgment in that court in favor of the bank and against the defendant, Charles R. Parrish. The writ was properly served upon the Investors Syndicate. So far as is made to appear, the proceedings had in the case of the bank against Charles R. Par-

rish were regular, and the bank has a valid subsisting claim to the check unless the claim asserted by Edna Parrish is superior thereto. The claim of Edna Parrish is founded upon the claim that she received an equitable assignment of the check before the writ of garnishment was served upon the Investors Syndicate. The evidence touching the claimed equitable assignment is to the following effect: Edna Parrish, the interpleaded defendant, had secured a divorce from Charles R. Parrish. By the decree of divorce Mrs. Parrish had secured a money judgment against Charles R. Parrish which had not been paid. Charles R. Parrish was cited to show cause why he had not paid the judgment. A hearing was had upon the order to show cause before Judge Oscar W. McConkie in the district court of Salt Lake county, Utah. Subpoena duces tecum was served upon Pearl Miller, branch office secretary of the Investors Syndicate. Pursuant to the subpoena, Miss Miller brought into court the check here in question. It was received in evidence and later withdrawn and returned to the Investors Syndicate. After the hearing Miss Miller went into the office of Judge McConkie, who informed her that she could take the check back to the office, but it should be paid to Mrs. Parrish and should not be given to the defendant.

Mr. Tanner, attorney for Mr. Parrish testified that

"at the conclusion of these proceedings, Judge Whittaker and I and the court, in the absence of the reporter, had a conversation with reference to impounding that check. That prior to that, there had been a motion made but had not been ruled upon. * * * After the case was over, after the parties had both rested and submitted the case, I asked the court to impound the check. * * * When I made the motion, Judge Whittaker said, 'That is not necessary, you can have that, and we will take care of the balance of it within a few days.' That at that declaration I said, 'Well, there is no necessity of pressing that motion. I withdraw it.' I met Judge Whittaker as we left the court room and suggested that he go with me to get this money. That he then said, 'In a few days we will take care of it all; we are going to apply for the loan forms of the insurance policy, and at that time we can clear up the whole matter.'"

It is upon substantially the foregoing testimony that Mrs. Parrish claims and the trial court found an equitable assignment was made by Charles R. Parrish to Edna Parrish.

By the prevailing opinion, such finding is sustained. I am unable to concur in such view. Obviously the conversation had in the office of Judge McConkie by him and Miss Miller, being as it was in the absence of Charles R. Parrish and his attorney, can have no bearing on the question of whether an equitable assignment was or was not made. So far as is made to appear, Mr. Whittaker was without authority to make an equitable assignment. The mere relation of attorney and client did not authorize the former to make an assignment of the check. 6 C. J. 657-660, and cases there cited. So far as is made to appear, Mr. Parrish was not present at the time the motion to impound the check was made or at the time of the conversation between his attorney and the attorney for Mrs. Parrish. Nor is there any evidence which shows that Mr. Parrish authorized his attorney to transfer the check to Mrs. Parrish or that he ratified what his attorney said concerning the same. The burden was on Mrs. Parrish to establish by evidence an equitable assignment to her, and if made by an attorney or agent, the authority of such agent or attorney to make the same. She failed to discharge that burden.

Moreover, statements made by counsel for Mr. Parrish are in the nature of a promise to at some future time give the check to Mrs. Parrish rather than to presently pass a right thereto. There was no delivery of the check, either actual or symbolic. The check was not indorsed by either Parrish or his attorney, nor did either authorize Investors Syndicate to turn the check over to Mrs. Parrish. The attorney for Mrs. Parrish apparently understood that it was necessary that either Mr. Parrish or his authorized agent must sign the check before a right thereto would vest in Mrs. Parrish. In such case it may not be said that there was an equitable assignment of the check. 5 C. J. 902, 912; *Christmas* v. *Russell,* 14 Wall. 69, 20 L. Ed. 762; *Commercial*

*National Bank* v. *City of Portland,* 37 Or. 33, 54 P. 814, 60 P. 563; *Hossack* v. *Graham,* 20 Wash. 184, 55 P. 36; *Colleps* v. *George W. Smith Lumber Co.* (Tex. Civ. App.) 185 S. W. 1043; *In re Stiger* (C. C. A.) 209 F. 148; *United States* v. *D. L. Taylor Co.* (D. C.) 268 F. 635.

The judgment appealed from should be reversed.

WOLFE, Justice (dissenting).

After much doubt, which a study of a considerable number of cases has not completely dispelled, I have come to the conclusion that I must dissent from that part of the prevailing opinion which holds that there was an equitable assignment by Dr. Parrish to Edna Parrish of the claim which the former had against the Investors Syndicate. In the first place, it is necessary to determine what particular thing Judge Whittaker, attorney for Dr. Parrish, and Mr. Tanner, attorney for Mrs. Parrish, were referring to when they had their conversation in the courtroom the 4th day of January, 1933, (when the order to show cause why Dr. Parrish should not be adjudged guilty of contempt was returnable) relative to the motion made by Mr. Tanner to impound the check made out by the Investors Syndicate to Dr. Parrish and which was in the courtroom under the custody of Miss Pearl Miller, an agent of the Investors Syndicate, in response to a subpoena duces tecum. Miss Miller testified that Judge Whittaker had said, "You can have the check, we are not trying to avoid the debt. We want to pay it. You can have it." Mr. Tanner testified Judge Whittaker said, "That is not necessary, you can have that, and we will take care of the balance of it within a few days." In answer to which, he stated, "Well, there is no necessity of pressing that motion, I withdraw it." It is rather evident that the parties referred to the check. The check had been made out in favor of Dr. Parrish by the Investors Syndicate for $856.75, which was the net amount owing by the Syndicate to Dr. Parrish after subtracting from the surrender value of his certifi-

cate in that company the amount of money which he had borrowed thereon. The check, an order on a bank in which the Syndicate had deposited its funds, reflected the indebtedness which the Syndicate owed to Dr. Parrish, but independent of the check, which was the method of paying the indebtedness, the underlying indebtedness existed. I think it would make a difference in this case as to whether it was contended the check had been assigned or the indebtedness had been assigned. Certainly, if it is claimed that there was an equitable assignment of the check, perhaps different evidence would be required of the assignment than if it were contended the indebtednes had been assigned. The check was capable of indorsement and manual delivery. The indebtedness represented by the check was not capable of manual delivery or reduction to possession so that in order to show a transfer of the present right in the indebtedness independently of the check certain evidence might be required. However, the indebtedness and not the check was garnisheed by the bank and the interpleaded defendant, Edna Parrish, alleged in her answer that an assignment was duly made by Charles R. Parrish, acting through his attorney, J. J. Whittaker, of "the sum of money mentioned in the answer of the garnishee, to wit, the sum of $856.75." So it appears from the evidence that the conversation in the courtroom on the 4th day of January, 1933, referred to the check, whereas the pleadings in regard to the case at bar referred to an indebtedness. Treating the matter as if it were an assignment of the indebtedness, the conversation about the check in the courtroom, above referred to, being considered as relating to the indebtedness by referring to the tangible evidence of the indebtedness, to wit, the check, I shall set forth the elements necessary to perfect an equitable assignment of the indebtedness. It is generally held that in order to perfect and make an equitable assignment no particular words nor particular mode are necessary. There must, however, be shown by the circumstances surrounding the transaction the following elements: There

must be an absolute appropriation by the assignor of the debt to the use of the assignee. The assignor must intend to transfer a present interest in the debt. It is further laid down that there must be a relinquishment of control by the assignor, but this may be but another way of stating that unless there is a relinquishment of control, no present interest in the indebtedness can be considered as having been transferred. If he retains control, it is fatal to the assignment. As is quite frequently the case, the law stated in the abstract does not reveal its difficulties until an attempt is made to apply it to a concrete situation. What constitutes a present appropriation of the debt to the use of the assignee is a difficult question.

"An equitable assignment is such an assignment as gives the assignee a title which, although not cognizable at law, equity will recognize and protect. It is in the nature of a declaration of trust, and is based on principles of natural justice and essential fairness, without regard to the form." 5 C. J. 837, § 2.

An examination of many of the authorities reveals the fact that there is a great conflict among them as to what is required to show a passage of title under the theory of an equitable assignment. Some of the courts have held that there was an equitable assignment under a certain state of facts, whereas other courts, under substantially the same state of facts, have held that some of the elements were missing. Other courts have unconsciously gone so far in requiring proof of a transfer of a present interest or proof of an appropriation to the use of the assignee as practically to make the requirements those of a legal assignment, evidently forgetting that legal assignments may be made orally. Of course, this destroys the distinction between a legal and equitable assignment because an equitable assignment is, in equity, an assignment, though not in law, that is, one which equity in good conscience will recognize as fair and just under the circumstances. See *In re Macauley* (D. C.) 158 F. 322. Other courts have gone to the other extreme and

apparently have sized up the situation, and if the chancellor felt that the circumstances warranted equity in saying that the title of the debt should be in the assignee, he so held without much regard to any of the elements which are necessary to make an equitable assignment. The difficulty has been in distinguishing between a promise by the alleged assignor to pay out of the fund over which he has control or which in the future was to be created for him, and an actual transfer of the interest in the fund. It seems to be quite clear that if the transaction between the parties creates merely an obligation by such alleged assignor to make payment out of a particular fund, or to promise in the future to transfer a debt owing him to the alleged assignee, it cannot be treated as an assignment. See *Thomas* v. *New York & G. L. Ry. Co.,* 139 N. Y. 163, 34 N. E. 877; *Rogers* v. *Hosack's Executors,* 18 Wend. (N. Y.) 319; *Christmas* v. *Russell,* 14 Wall. 69, 20 L. Ed. 762; *Trist* v. *Child,* 21 Wall. 441, 22 L. Ed. 623; *Donovan* v. *Middlebrook,* 95 App. Div. 365, 88 N. Y. S. 607. If, on the other hand the transaction has given rise to a right upon the part of the alleged assignee to come against the debtor of the assignor, or to come against the fund, that is to say, the debt has been appropriated to the use of the assignee, or he has present right in the debt or fund whether such fund is presently in existence or to be created in the future it is then to be an assignment. *Wright* v. *Ellison,* 1 Wall. 16, 17 L. Ed. 555; *Smedley* v. *Speckman,* 157 F. 815, 85 C. C. A. 179; *Weaver* v. *Atlantic Roofing Co.,* 57 N. J. Eq. 547, 40 A. 858; *Seyfried* v. *Stoll,* 56 N. J. Eq. 187, 38 A 955; *Board of Education of School Dist. No. 85* v. *Duparquet,* 50 N. J. Eq. 234, 24 A. 922; *Lanigan's Adm'r* v. *Bradley & Currier Co.,* 50 N. J. Eq. 201, 24 A. 505; *Bower* v. *Hadden Blue Stone Co.,* 30 N. J. Eq. 171, affirmed *Lyon* v. *Bower,* 30 N. J. Eq. 340; *In re Stiger* (D. C.) 202 F. 791; 3 Pomeroy's Eq. Jur. § 1280.

A number of cases, including the United States Supreme Court, have laid down the test as to whether the alleged assignee would have the right to compel the assignor's debt-

or or the holder of the fund to pay him, or, put in another way, as to whether the holder of such fund or the assignor's debtor could safely pay. See *Fairbanks* v. *Sargent*, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475. I submit that this is begging the question. If there is an assignment, the assignor's debtor could safely pay or the assignee could compel him to pay. If not, he could not be compelled to pay. The helpfulness of such a test is exactly nil. After it is stated, we are thrown back just as much upon the determination of whether there has actually been a transfer of a present right.

It has been generally held that, unless the statutes require, in order to perfect a legal assignment it is not necessary that the debtor of the assignor or the holder of the fund be notified of the assignment. If the assignor assigns to two persons, the question of who is prior may depend upon which of the assignees first notified the debtor or holder of the fund, but such notification is not necessary to a legal assignment, consequently it would not be necessary in the case of an equitable assignment. But it may be one of the methods by which an appropriation of the debt or fund to the use of the assignee may be shown. It would certainly be evidence of a transfer of a present right. But such appropriation might be otherwise shown as in the case of *Oppenheimer* v. *First National Bank,* 20 Mont. 192, 50 P. 419, where a corporation was indebted to a partnership and at the request of a member of the partnership the corporation consented to transfer a certain sum of money owing it, the corporation, from the First National Bank at Butte and entries were made on the respective books of the firm and the corporation showing the transaction. In the case of *Hutchins* v. *Watts and Choate,* 35 Vt. 360, the defendant Watts verbally agreed to assign to the plaintiff a demand in favor of the former against Choate, the trustee, whereupon Choate was called in and in the plaintiff's presence was informed by the defendant that he had transferred his claim against the trustee to the plaintiff and was requested by

the defendant to pay to the plaintiff. It was held that the assignment from the defendant to the plaintiff was a present and perfected one, the notice to the fundholder or debtor in this case being evidence of the appropriation. In the case of *Richardson* v. *Rust* (1841) 9 Paige (N. Y.) 243, it was held that where a defendant sold certain demands which he had against the county to his creditors in favor of whom orders for the payment thereof were afterward made, it constituted an equitable assignment. The court said that it was more than a mere promise to pay them out of the fund when audited. Evidently the reporter of the opinion somewhat questions the decision, because he states in the syllabus: "Whether a mere agreement by the owner of a fund to pay the debt of his creditor out of such fund, when received by him, gives to the creditor an equitable lien upon the fund." This query has been definitely answered in many cases as above noted in the negative.

It was held in *York* v. *Conde*, 61 Hun, 26, 15 N. Y. S. 380, that an agreement to pay certain claimants who had indorsed the notes of a firm in order to enable it to carry out the contract out of which such fund arose and that such claimants should have the proceeds of such contract when closed to repay them the amount paid by reason of said indorsements, was an equitable assignment and that such indorsers were entitled to priority over other creditors of the firm holding a subsequent written assignment of said fund from it. It is difficult to see why this case is not contrary to the general rule that a promise to pay out of a fund is not an equitable assignment. In *People* v. *Westchester County*, 57 App. Div. 135, 67 N. Y. S. 981, it was held that a written order given by building contractors on a county, directing the building committee of the county to pay a subcontractor "such amounts as may be due them from us," which was accepted by such committee, is binding on the county as an equitable assignment. The notice to the county to pay to the subcontractor was an appropriation.

In *Hanchey* v. *Hurley*, 129 Ala. 306, 30 So. 742, it was held, quoting from the syllabus:

"An order for the payment of money, until accepted by the party upon whom it is drawn, does not operate as an assignment, either at law or in equity, nor does a mere agreement between a debtor and creditor that a third person shall collect a particular fund, and apply the same to the indebtedness existing between them, operate as such until such person has collected the fund and agreed to so apply it."

Certainly the first part of this statement is against the weight of authority.

In the case of *Philadelphia Veneer & Lumber Co.* v. *Garrison*, 160 Ky. 329, 169 S. W. 714, it was held, quoting from the syllabus:

"Any order, writing or act which makes an appropriation of a debt or fund amounts to an equitable assignment thereof."

In *Wood* v. *Casserleigh*, 30 Colo. 287, 71 P. 360, 362, 97 Am. St. Rep. 138, it was stated:

"An intention to assign, on the one side, and an assent to receive, on the other, operate as an equitable assignment of the subject-matter of transfer, if sustained by a sufficient consideration. The form of words used is not, alone, controlling, but all the circumstances of the transaction are to be considered in determining the intention of the parties to such an agreement."

The contract between the parties provided that the defendants agreed to give to the plaintiff a two-thirds interest in the amount recovered through law if legal proceedings were commenced and a one-fourth interest of any amount recovered if settlement was made without legal proceedings. From the contract it would appear that there was nothing but an agreement. The court said: "A specific share in a specific property was what the parties contemplated." It was held to be an equitable assignment. An identical contract between Wood and Casserleigh was up before the United States Circuit Court of Appeals of the Eighth Circuit, and was there held not to be specifically enforceable by

a court of equity. See *Casserleigh* v. *Wood*, 119 F. 308. It is submitted that a mere conversation showing an intention to assign and intention to accept is not sufficient; there must be some act showing an appropriation of the indebtedness or fund to the alleged assignee from which the alleged assignor cannot retreat.

In the case of *Winberry* v. *Koonce*, 83 N. C. 351, it was stated:

"An intent to sell by one and an intent to buy in the other, at a price paid or agreed to be paid, with such conduct or acts as means that the one resigns all future control of the chose, and the other assumes to regard it as his own, is an appropriation inter se, and on notice to the party who is to pay it, approximates a delivery of a chattel, and is then called a constructive delivery, and thereupon the right of the assignee is perfected against any possible further control of the assignor."

In the case of *Weaver* v. *Atlantic Roofing Co.*, 57 N. J. Eq. 547, at page 554, 40 A. 858:

"The essential requisite of such an assignment is not the vesting of a right to immediate payment in the party in whose favor it is given, for it may be subject to prior equities (*Bank of Harlem* v. *City of Bayonne*, 48 N. J. Eq. [3 Dich.] [246] 253, 21 A. 478), but that the assignor should presently strip himself of his interest in the fund or in some part thereof. This he may do by directing payment to the party to be benefited, or to some one else for his use. It may be either an absolute or a conditional order, by a direction for immediate payment, or for a retention to secure a future payment. When made, the effect of the transfer by the assignor must be such that no power remains with him to revoke or control the disposition made."

From the above cases, and many more which might be added, some idea may be obtained as to what acts are necessary to make the appropriation or to strip the alleged assignor of his interest or to transfer a present right—all different methods of expressing the simple idea of doing those acts which in equity will be considered as having passed the title to the assignor's right in the fund or debt. If we take the evidence in this case in the light of the prin-

ciples above enunciated and in view of the cases herein considered, it appears to me that there is not sufficient evidence to show that Dr. Parrish stripped himself of all control over the indebtedness owing to him by the Investors Syndicate. No order or direction was given to the Syndicate to pay the indebtedness to the intervener. The language used was in effect, "You may have that" (referring to the check). If we treat this statement as referring to the indebtedness in the sense that the reference to the check was something representative of the indebtedness, we in reality only have the statement that the intervener might have the indebtedness. But this does not seem sufficient to strip Dr. Parrish's control over the indebtedness. It was an expression of willingness to give the intervener the debt. It can hardly be said that there was anything which showed a present intent to transfer it or that there was any act which could be construed in equity as a transfer of it. If the bank had not garnisheed and if this controversy were between Mr. and Mrs. Parrish, it might well be that an estoppel could be pleaded because of the intervener withdrawing her motion to impound the check on the supposition there had been an appropriation of the debt to her use. Dr. Parrish, knowing that the motion to impound had been abandoned upon the supposition that the debt had been assigned, might be estopped from asserting that he had not assigned it. But estoppel cannot be urged against a stranger. Further evidence seems to bear out the above analysis that the statement of Judge Whittaker could only be construed as a willingness to tranfer. When the attorney walked out of the courtroom, according to the testimony of Mr. Tanner, the latter suggested that Judge Whittaker go with him to get the money, to which response was made, "In a few days we will take care of it all; we are going to apply for the loan forms of insurance policy, and at that time we can clear up the whole matter." This appears to be consistent with the idea that the $856.75 had not yet been turned over. In fact, the only evidence of an assignment is the statement that

"you may have that," or "you may have the check," both expressions having been used by different witnesses. There was no constructive delivery of the indebtedness which would have made it an oral legal assignment nor any appropriation to Mrs. Parrish which could be said to amount to a transfer of the present right to the indebtedness.

I concur with the dissenting opinion of the CHIEF JUSTICE where he states that the statements of the judge could only show what understanding the judge had as to the agreement of the parties and cannot bind Dr. Parrish because it does not even appear that Dr. Parrish was present when these statements were made by the trial judge.

Having arrived at the conclusion as I have, it becomes unnecessary to consider the question as to whether Judge Whittaker as attorney for Dr. Parrish had authority to make the statements. It may well be that since he was representing his client in the hearing to show cause why the latter should not be committed for contempt for failure to pay $2,900 and since part of the property of Dr. Parrish was in court represented by the check, perhaps subject to the court's order as in a supplemental proceeding, the authority of the attorney may perhaps be considered to have gone to the extent of doing those things necessary to defend or purge or excuse the alleged contempt, or, if there was contempt, to do any act by way of mitigating it to save the doctor punishment therefor. While the conversations between the attorneys above referred to evidently took place after the main case had been submitted so that it could not be presumed that Dr. Parrish was still in the courtroom and heard the remarks, although he may have been, yet if the attorney had the authority it would not require the supporting fact of a client standing by without protesting when his attorney agreed to a certain disposition of his property if such silence could be construed as a consent or modification. If the authority was there inherent in the attorney because of the nature of the case, so that representation of his client in the case would require that he had the

power to appropriate certain of his client's property to a settlement of the suit as part of his powers necessary to proper representation, it would make no difference whether the doctor was present or absent. But, as stated, that it is not necessary to determine that question which itself may be one of considerable nicety.