## HARRINGTON v. INTER-STATE FIDELITY BUILDING & LOAN ASS'N (EVERITT et ux., Interveners).

No. 5372.   Decided January 4, 1937.   (63 P. [2d] 577.)

*White, Wright & Arnovitz*, of Salt Lake City, for appellant.

*Backman & Backman, Stephens, Brayton & Lowe*, and *H. R. Boyer*, all of Salt Lake City, for respondents.

WOOLLEY, District Judge.

The plaintiff, who is the appellant here, as the administratrix of the estate of one Delbert Richard Everitt, deceased, brought this action against the Inter-State Fidelity Building & Loan Association, a corporation, defendant and respondent, to recover a judgment for the amount which she claimed to be due the estate of said deceased person upon a subscription contract for twenty shares of what is designated as Investors Guaranty Dividend stock of said corporation, predicating her right thereto upon the facts which she alleged and upon the statutes of this state relating to building and loan associations, particularly section 1104, Comp. Laws Utah 1917, which is the same as section 7-5-12,

R. S. Utah 1933, which provides that upon the death of a stockholder of such a corporation, his legal representative shall be entitled to receive the full amount paid in by him upon all shares not borrowed upon or pledged to the corporation as collateral security, after certain membership or withdrawal fees and charges have been deducted.

The subscription contract in question was made between the defendant corporation and Delbert Richard Everitt, and the account was carried upon the books of the corporation in his name. His parents, nevertheless, upon his death, claimed the right to receive payment from the corporation of the amount that had been paid on the contract, basing their claim upon two grounds, namely: (1) That their son in his lifetime had given the certificate for the stock to them; and (2) that they and not their son had made all the payments which had been made upon the contract. Hence they claimed that the stock or the amount due thereon belonged to them and that they and not the plaintiff were entitled to receive payment thereof from the defendant. There had been some kind of certificate issued by the corporation to the son as evidence of his right to the twenty shares of stock when he should have paid for them according to the terms of his subscription contract. This certificate was in the possession of the parents when their son died, but it had never been indorsed by him. A short time after his death the parents presented the certificate to the corporation and demanded payment of the amount due on the contract. In compliance with this demand the corporation paid over to them the amount due, which was $403.24, but at the same time required them to furnish and they did furnish a bond by which they and their surety undertook and agreed to hold the corporation harmless in case it should thereafter be required to make payment on said shares to any other person.

In her amended complaint, the plaintiff, in addition to the necessary matters of inducement, and so forth, alleges: That under date of June 25, 1924, the defendant issued to Delbert R. Everitt, deceased, a certificate entitling him to

the delivery of twenty shares of the capital stock of said corporation of the kind above mentioned, upon payment by him of $63.50 per share, or a total sum of $1,270, which he agreed to pay at the rate of $10 per month; that he commenced to pay the sum of $10 per month on the 25th day of June, 1924, and continued to pay the said sum of $10 per month each month until the 16th day of March, 1929, at which time he had paid to the defendant a total sum of $480; that said Delbert Richard Everitt died on March 30, 1929; that the certificate of stock hereinabove mentioned as the property of the decedent became the property of the estate of the decedent, and the plaintiff herein, as the administratrix of the estate of the decedent in and for the State of Utah, prosecutes this action to recover the withdrawal value of the said certificate of stock; that this plaintiff succeeded to the rights of the decedent, acquired under the terms of the said certificate of stock, which had not been pledged to the defendant as collateral security or borrowed upon by the decedent.

In due time the defendant filed an answer to the amended complaint, in which it admits that it issued the certificate above mentioned to the said Delbert Richard Everitt, alleges that on April 12, 1929, the cash surrender value of the said certificate was $403.24, and denies all of the other allegations of the amended complaint that are above set forth in substance. Further answering, the defendant, in paragraph 7 of its answer, alleges in substance: That Mr. and Mrs. D. A. Everitt, parents of the deceased, prior to April 13, 1929, made demand upon defendant for the payment to them of the withdrawal value of said certificate, claiming to be the owners of the same by reason of the facts above mentioned upon that subject; that the parents claim to be the owners of all moneys due; that the defendant is unable to determine the conflicting claims of the plaintiff and the parents to the money due under the said certificate; that a complete determination of the controversy cannot be had without the presence of the parents, who claim to have an interest in the

subject-matter in question; and that the defendant believes they should be made parties to the action and should be required to set forth their claims to the fund in question, so that the whole matter may be adjudicated in one proceeding. The defendant therefore prays that the court order that the parents be made parties defendant to the action and that they be required to set forth the nature of their claims to said money; that the court determine the rights of the conflicting claimants; that the court direct the defendant as to its further actions and that the defendant be permitted thereafter to go hence with its costs; and for such other and further order as is meet and proper to permit of a full and complete adjudication with respect to the rights of the said conflicting claimants.

The trial court declined to order that the parents of the deceased be made parties defendant to the action, and upon motion of the plaintiff, ordered that paragraph 7 of the answer be stricken therefrom, on the ground that the allegations therein were sham and superfluous.

Thereupon the parents applied to the court for permission to intervene in the action. They supported their application by an affidavit in which they alleged: That they subscribed for said shares on behalf of their son; that they made all payments which had been made on account of said stock; that said stock was not given to their son as a gift; that on or about April 13, 1929, they withdrew from said building and loan association the proceeds of the said certificate of stock as the owners thereof; that they have an interest in the matter in litigation and in the success of the defendant in its defense to the plaintiff's cause of action; and that they will either gain or lose by the direct operation and effect of the judgment which will be rendered in this cause.

The trial court, over objection by the plaintiff, granted said application and permitted the parents to intervene. They did so by filing an answer to the amended complaint of the plaintiff, in which, after making certain admissions and denials, they alleged that they paid for the certificate of

stock in question; that they made all payments which were made on account of said stock; that the money due on said stock was in truth and in fact their money; that said stock was never given or delivered to said Delbert Richard Everitt; and that because of the payments which had been made upon said stock by them, said deceased in his lifetime had agreed to assign and transfer said certificate to them. Their prayer is that the plaintiff take nothing by this action and that the complaint be dismissed and for their costs. To this answer of the interveners the plaintiff filed a reply in which she denies all of the affirmative allegations contained in said answer and alleges the furnishing of the undertaking as above mentioned to the defendant by the interveners.

The case was tried upon said pleadings to the court sitting without a jury. The court found that the parents of the deceased made all payments which were made, and that the deceased during his lifetime gave said certificate to them; and concluded as a matter of law that the defendant building and loan association was entitled to a judgment against the plaintiff of no cause of action. Judgment was entered accordingly, and the plaintiff appeals from the judgment. She makes five assignments of error, which will be disposed of in the order in which they are made.

The first assignment is that the court erred in making its order permitting the parents to intervene in the action.

Interventions are regulated by statute in this state. Section 104-3-24, R. S. Utah 1933, which is the same as section 6518, Comp. Laws Utah 1917, in force when this action was commenced, reads as follows:

"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties or an interest against both. An intervention takes place when a third party is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by de-

manding anything adversely to both the plaintiff and the defendant; and is made by complaint setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint."

The question whether said statute applies to a particular situation has been before this court in a large number of cases. Two of them are referred to by the parties in this case. The defendant building and loan association cites *Houston Real Estate Inv. Co.* v. *Hechler*, 44 Utah, 64, 138 P. 1159, wherein this court held that section 2925, Comp. Laws Utah 1907, which is the same as the statute above quoted, is intended to apply in cases where a third person at some stage of the proceedings before trial is shown to have such an interest in the subject of the action as makes him a proper party thereto; and that it is not limited in its application alone to those who may be said to be indispensable or necessary parties. The plaintiff cites and relies upon *Price* v. *Hanson*, 60 Utah, 29, 206 P. 272, wherein the late Mr. Justice Frick, who also wrote the opinion in the former case, makes a statement parenthetically which seems to indicate that the statute is not intended to apply so as to permit a third person to intervene in an action unless he shows in his application that he would have been at least a proper party to the action when it was commenced, and that he would have been entitled to the relief he seeks in a separate action in the same court against the parties against whom he seeks relief.

Assuming that the statute was intended by the Legislature to be limited in its application as suggested in the later case, which, to this writer's mind, is a proposition of doubtful validity, since by the express terms of the statute any person may intervene who is merely interested in the success of either of the parties and who may not claim any affirmative relief against either, let us analyze the situation here and determine whether the parents were proper parties to the action when it was commenced.

In the first place, what is the matter in litigation in this case, and do the interveners have an interest in that matter? If they have or claim to have an interest in the subject-matter in litigation, it will not be denied that they were proper parties to the action when it was commenced. The pleadings refer indiscriminately to the certificate of stock, the withdrawal value of said certificate of stock, the funds due under the terms of this certificate, twenty shares of stock, and the money due under said certificate, sometimes as if one and sometimes as if another of those things were the subject of the action or matter in litigation. In reality, however, is not the matter in litigation the debt which became due and owing by the building and loan association ostensibly to the legal representative of Delbert Richard Everitt upon his death? We think so. But it makes no difference what it is that is held to be the subject of this action or matter in litigation. Whatever it is that the plaintiff claims by this action, the interveners also claim. It is an intangible property right, arising by operation of law out of the subscription contract upon the death of Delbert Richard Everitt. It is the right to receive payment of the debt. When the plaintiff brought this action to compel the payment of the debt to her, she might well have included the parents as parties defendant along with the building and loan association, if she knew that they asserted a claim of ownership in the property which she claimed; but since she did not make them defendants and did all that she could to keep them out of the case, they had the right to come in as interveners and to resist the plaintiff's demands. They were proper parties to the action, being adverse claimants to the ownership of the property rights in litigation, which rights were the matter in litigation. The court did not err therefore in permitting them to intervene.

Furthermore, if what the interveners say about this stock subscription is true, and the trial court found it is, then the legal title to the property right was vested in the son in trust for the parents, who were the equitable owners thereof; they having made all payments on the stock. If this view

be taken of the case, then the question has already been decided by this court, for in the case of *Salina Canyon Coal Co.* v. *Klemm,* 76 Utah 372, 290 P. 161, this court held that a beneficiary under a trust may sue to protect his rights, especially in a case where his interests are hostile to those of the trustee.

The second and third assignments relate to the admission of evidence. The third has not been argued and is therefore deemed abandoned, leaving only the second to be considered. In regard to No. 2, the record shows that Albert Everitt, a brother of the deceased, and Mrs. D. A. Everitt or Anna P. Everitt, his mother, and Delbert Everitt, his father, were all called as witnesses and testified for the defendant. Albert Everitt's testimony, as summarized from the abstract, is as follows: He was present when his brother subscribed for the stock; when he signed the subscription, he did not make any payment and the first payment was made by his mother; the witness was present at his home on June 25, 1924, the father also being present, when a conversation was had between Delbert Richard Everitt and his mother concerning his carrying on this stock certificate; at that time Delbert Richard Everitt said to his mother that he did not want to carry on the transaction that he signed, did not want to have anything more to do with it, that it related to something he did not want to take on, that he was not going to carry it through. The witness further testified, referring to another occasion: "He told me if she wanted to go ahead and carry it on as her own account she could. He did not want to have anything more to do with it." This witness also testified that his brother never made any of the payments on the stock; that all of them were made by the mother. The mother testified that she made all payments which were made to the company on the stock, and that Delbert Richard Everitt did not make any of them, and that he did not forward her any money with which to make them. She produced checks for all payments from February 11, 1927, to and including March 8, 1929, and also

a check in the sum of $10 dated July 15, 1924; and testified that the decedent gave the certificate to her at the time of the first payment and that she made all the payments; that she did not receive any money from the decedent to make the payments. She was asked if she had any more checks for the year 1924, and replied: "If I have they are there." She was asked, "Have you any checks for 1925 or 1926? See if you can find any among those checks." To which she replied: "I do not see any. I did not pay it all in checks, anyway, I told you." She further testified that she made the first payment to agents named Nelson and Henricker; and that there had never been any formal assignment of the certificate or deposit book. The father testified that he saw his wife make some of the payments to the defendant; that the stock certificate was lying around the house until it was taken care of by being placed in a deposit box in the Zion's Savings Bank, which was jointly held by himself and wife; that he put it in the box but could not say when he did so.

The plaintiff objected to the foregoing evidence. The sole ground of the objection is that the same is not within the issues raised by the pleadings. It is argued that since the allegations of paragraph 7 had been stricken from the defendant's answer by order of the court, there was no issue left in the case to which such evidence might properly be directed; therefore, the proof offered by the defendant referring to the transfer of the certificate of stock by deceased to the interveners should not have been received, being immaterial. Indeed, appellant goes so far as to say that since paragraph 7 had been stricken from the defendant's answer, the court should not have considered whether the interveners had an equitable title to the certificate of stock.

There are two answers to this argument. In the first place, the issue of equitable title in the interveners was raised by their answer, and the evidence was material to the issue so raised. In the second place, the plaintiff's title to the property and right to the payment of the withdrawal value of the stock were put in issue by the denials in the answer

of the defendant of the allegations contained in the complaint respecting those matters; and the evidence was material to the issues so raised. The plaintiff having alleged in her amended complaint that the decedent made all payments on the stock which had been made, and that the certificate of stock became the property of the decedent upon his death, which allegations are denied by the answer of the defendant, the evidence was material upon the issues so raised to show who in fact did make the payments and who was the owner of the property. There was no error in the admission of such evidence and this assignment is not well taken.

The fourth assignment is that the trial court erred in making finding of fact No. 7, which reads as follows:

"That Mr. and Mrs. D. A. Everitt, the Father and Mother of said deceased, intervening defendants herein, made all of the payments which were made on said certificate."

The objection to this finding is that there is no evidence to support it. The appellant, however, frankly concedes that the evidence does show that the parents made all payments which were made on the certificate after February, 1927; but claims that there is no evidence to show that they made the the payments which were made prior to that date. In ▪ addition to the evidence upon this point which has been set forth in abbreviated form in connection with our consideration of assignment No. 2, there was also testimony given by one Mark A. Goldy, who seems to have had some connection with the defendant company, to the effect that Mrs. Everitt used to come in the office occasionally and make payments on the account; that he would not say she made all of them, as they pay no attention to that matter; and that out of a possible forty-eight times that payments were made on the building and loan certificate, he accepted the payments only six times. From a reading of all the evidence in the case bearing upon this point, it seems to us that the only fair deduction therefrom is that the parents did make all

the payments and that the deceased made none of them. This finding is therefore approved and the assignment in relation thereto is held to be without merit.

The fifth assignment of error is that the court erred in making and entering its finding of fact No. 8, which reads as follows:

"That said deceased, during his lifetime, gave the certificate in defendant company to his Father and Mother, the said Mr. and Mrs. D. A. Everitt."

This finding is also objected to on the ground that there is not sufficient competent evidence in the record to warrant or support a finding that the deceased during his lifetime gave the said certificate to the intervening defendants.

There are two points raised by appellant under this assignment, namely: (1) That there is no evidence to show that the deceased ever did deliver the stock certificate to his father and mother, and that since delivery of the stock certificate is essential under the Uniform Stock Transfer Act to transfer title to shares of stock, the evidence is insufficient to show a gift, citing *Hearne* v. *Gillette,* 151 La. 79, 91 So. 634; and (2) assuming that there was a delivery of the certificate, there is no evidence in the record to show that Delbert Richard Everitt indorsed the certificate either in blank or to a specified person, or made any written assignment thereof, as he was required to do by the Uniform Stock Transfer Act, section 18-3-1, R. S. Utah 1933, but on the contrary the evidence shows that he did not indorse the certificate, and therefore there was no valid gift of the stock to his parents. The statute herein mentioned reads as follows:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

As to the matter of delivery, we think. there is ample competent evidence in the record to show that Delbert Richard Everitt, if he ever had possession of the certificate, actually handed it over to his parents, intending thereby to transfer to them whatever title he had therein. If we disregard the testimony of the mother on this point on the ground that she was not a competent witness to the facts which were equally within her knowledge and the knowledge of her deceased son, there is still the evidence of Albert Everitt, which, coupled with the fact that the certificate was at all times in the possession of the parents and that they made all the payments on the contract, is sufficient to warrant if not to compel such conclusion.

In regard to the second point which appellant makes under her assignment No. 5, it would have to be conceded that her position is well taken, if the statute applies to the certificate here involved, for the certificate itself does not bear any indorsement by Delbert Richard Everitt, nor is there any evidence in the record to show that he ever signed a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, unless the court should also be of opinion that section 18-3-9 applies to the situation. That section provides that the delivery by the person appearing therein to be the owner thereof without the indorsement requisite for the transfer of the certifi-

cate and the shares represented thereby, but with intent to transfer such certificate or shares, shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering to complete the transfer by making the necessary indorsement. If, therefore, Delbert Richard Everitt did in fact deliver the certificate to his parents with intent to transfer to them the said certificate or the shares represented thereby, so that he was then under the obligation imposed by this section of the statute to complete the transfer by making the requisite indorsement of the certificate, and if he then died without having completed the transfer, thereby rendering it impossible for the rightful owners to compel specific performance against him, any court would be justified in refusing to aid his personal representative in an effort to recover the withdrawal value of the stock as against the claims of the rightful owners. But to dispose of this assignment in the manner just suggested is to leave undecided the point at issue between the parties. The point at issue is whether section 18-3-1 applies to this so-called certificate. That is the point which will be decided and upon which the case will be ruled so far as it is concerned with the lack of an indorsement on the certificate; section 18-3-9 having been referred to for the sole purpose of showing that section 18-3-1 is not the only section of the Uniform Stock Transfer Act which would have to be considered if the latter were held to apply to this certificate. Going back then to the point at issue, we think section 18-3-1 does not apply to this so-called stock certificate. It does not apply because this certificate is not a "certificate of stock" within the meaning of that term as used in the Uniform Stock Transfer Act, but is only a "certificate entitling the said Delbert R. Everitt to the delivery of twenty shares of the capital stock of the Fidelity Building and Loan Association, which stock was known as Investors Guaranty Dividend Stock, upon the payment by said Delbert R. Everitt of the sum of $63.50 per share or the total sum of $1,270 for the twenty (20) shares." The quotation is taken from para-

graph 2 of plaintiff's amended complaint, which we accept as an accurate description of the certificate. This certificate is a mere evidence of the contract by which the holder agrees to become a stockholder upon the terms and conditions stated therein; and until the payments are made on the contract, the account of the so-called stockholder with the building and loan association is to all intents and purposes nothing more nor less than a savings account. This certificate is not of the kind to which the Uniform Stock Transfer Act is intended to apply. Such accounts may be transferred by delivery of the passbook and other evidences thereof without any writing. A symbolical delivery is sufficient to effect the transfer. We therefore conclude that the second point which appellant makes against finding No. 8 is not well taken.

There being no error in the record, it is ordered that the judgment be and the same is affirmed. Respondent to recover its costs.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring).

I concur, but I think it unnecessary to determine whether section 18-3-1, R. S. Utah 1933, applies to this certificate. Even if it does not, the rules of the Inter-State Fidelity Building & Loan Association may require indorsement and delivery of the certificate to pass *legal* title. The opinion properly states that the delivery of the *unendorsed* certificate with intent to vest all right, title, and interest of the son to any benefits which it evidenced in the parents, was a typical case of an equitable assignment, *Milford State Bank* v. *Parrish,* 88 Utah 235, 53 P. (2d) 72.

Whether we consider that the son held the certificate as trustee for the parents, or whether he made an equitable assignment of it to them, makes no difference in the final result. An equitable assignment will, in equity, be recog-

nized as passing title to them and give equity jurisdiction to compel the administrator to do what is necessary to give the full enjoyment of the benefits of the certificate. Therefore I concur.

MOFFAT, J., being disqualified, did not participate herein.