(No. 1601, June 18, 1914)

SAMUEL G. HANNA, Appellee, vs. M. R. McCRORY, Defendant, The Bank of Commerce of San Marcial, Garnishee, Appellant.

### SYLLABUS BY THE COURT.

1. It is an elementary an well settled rule of the law merchant, that an order for the payment of money out of a particular fund, is not a negotiable instrument. It is likewise equally well settled, that the inclusion in a check, order

or bill of exchange of a direction to charge the amount to the check, order or of bill of exchange to a particular account, does not make it payable conditionally, or out of a particular fund, and therefore it is payable absolutely and is negotiable, and oes not constitute an assignment of a particular fund. And independent of judicial construction, this rule is established in New Mexico by Sec. 3, Chap. 83, S. L. 1907.

P. 188

2. The mere act of stamping a bill of exchange "paid" by the payee, in and of itself does not constitute payment. Payment could only be made by delivery of the actual cash, or an adjustment of accounts, by agreement of the parties, so that the payee would be obligated to the holder of the bill.                                    P. 189

3. Where. a statute requires the acceptance of a bill of exchange to be in writing and signed by the drawee, an oral acceptance is not binding upon the drawee.

P. 191

Appeal from District Court, Socorro County; Thomas D. Leib, Presiding Judge. Affirmed.

ALEXANDER R. MACDONNELL, for Appellant and Garnishee.

### BRIEF OF GARNISHEE.

Affidavit. 6 Tex. 315; 49 S. W. 774; 12 N· M. 460-473.

In hands of garnishee, money was no longer property of defendant, but had been assigned to third parties. 86 Ill. App. 364.

General Rule in Garnishment Proceedings. 7 Ind. 348; 7 Ill. 546; 15 Ill. 90; 19 W. Va. 115; 13 Vt. 133; 16 Mass. 522; 35 Cal. 385-386; 64 Wis. 662; 2 N. H. 375; Id. 439.

Plaintiff's Right. 8 Ky. L. Rep. 62; Cent. Digest, Vol. 24.

Garnishee Not Liable. Am. Digest, Cent. 1Ed., Vol. 24; 75 Ill. 469; 39 Mich. 793.

Garnishee Cannot be Subjected to Debt. 27 Minn. 85; 6 N. W. 445.

Assignment Will Prevent Garnishment of Account. 24 Mo. 260.

No charge that assignments were without consideration or fraudulent. 124 Pac. 759; 1 How. 43; 31 Miss. 693; 51 Miss. 211.

To Subject Garnishee to a Liability. 21 Mo. 30.

Garnishment Does Not Give Creditor Precedence. 15 Cal. 38.

Draft Preferred to An Attachment. Fed. Case No. 9474.

Absolute Assignment Not Necessary. 124 N. M. Rep. 36; 37 Mo. 525; 38 Mo. 545; 6 N. M. Rep. 6.

Burden of Proof. Dec. Digest, Sec. 162; S. Mo. 657; 2nd Story's Eq. 734-44.

## BRIEF FOR APPELLANT.

Negotiable Instrument Law. Secs. 127, 132, Chap. 83, L. 1907; 78 Fed. 774; 158 Ala. 169; 73 Con. 341; 64 Ill. App. 179; 129 Ia. 518; 90 Am. Dec. 196; 56 Wis. 292.; Daniels on Negotiable Instruments, p. 110; 70 Mo. App. 285-291; 88 N. W. 67; 7 Cyc., p. 613; 66 Fed. Cas· 851; 48 Cal. 665; 3 Dill. 210.

Orders Non-negotiable. 56 Ia. 96; 153 Ala. 756; 88 Mo. 342; 51 Miss. 631; A. & E. Enc. L., p. 885; 30 A. & M. Dec. 246; 8 B. Mon. 168.

JAMES G. FITCH, for Plaintiff and Appellee.

Inaccurate Use of Word. 4 N. M. 93-129 to 132; 38 Cyc. 1986; 43 Mont. 310; 55 Wash 458.

Negotiable Instruments Law. L. 1907, C. 83, Secs. 185, 187, 189, 132, 136, 137, 16.

Acceptance. Sec. 2546, C. L. 1878; 94 U. S. 343; 143 Ill. App. 625; 220 Pa. 1; 149 Mich. 483; 118 Pa. St. 294.

Delivery. 7 Cyc. 685-686; 54 S. W. 414; 9 Wis. 53; 180 Ill. 270.

Bank Liable at Time of Garnishment. 5 Cyc. 540; 124 U. S. 385; 146 Ala. 688; 114 Tenn. 693; 31 Okla. 139; 15 Cal. App. 347.

## OPINION.

ROBERTS, C. J.—On, or shortly before October 15th, 1912, the Bank of San Marcial, collected a life insurance policy for the defendant, McCrory, in the sum of two thousand dollars. From the amount so collected it made certain deductions, and payments on the order of McCrory, and on the morning of the 16th of October thereafter there remained in the possession of the bank, to the credit of McCrory, the sum of $1,412.58. Shortly after the opening of the bank on the morning of October 16th, about nine-five or nine-ten o'clock, Frank Johnson, Seymour Worrell and Thomas Marron each presented orders on said bank, or the cashier thereof, signed by said McCrory, for the following amounts:

> To the order of Frank Johnson.................$ 31.33
> To the order of Seymour Worrell ................ 500.00
> To the order of Thomas Marron........................ 160.00

said orders totalling $691.33.

The order given to Thomas Marron was as follows, to-wit:

"San Marcial, N. M., Oct. 15, 1912.
"Mr. J. W. Joyce,
    "Cashier of the Bank of San Marcial.
"Pay to the order of Tom Marron the sum of ($160.00) one hundred and sixty dollars, and charge the same against the ($2,000.00) two thousand insurance draft issued by Dora Alexander of the Woodman Circle in my favor, the same being the balance of my account with him.
        "Respectfully,
           "M. R. McCRORY."

The other two orders referred to were in the same language, except as to names and amounts.

The cashier of said bank took said orders, marked on each of them "Presented October 16th, 1912, 9:05," and stamped said orders on the face thereof with the bank

stamp, which read as follows: "Paid October 16th, 1912, Bank of San Marcial, San Marcial, New Mexico," and thereupon said cashier make his check to each of the said parties for the amount respectively of the check or order so presented by them. Such checks, however, were not delivered to said parties, the bank retaining possession thereof, for the alleged purpose of protecting itself against garnishment proceedings which had been theretofore instituted by Armstrong Brothers, and then pending. Between one and two o'clock in the afternoon of the 16th day of October, the bank was served with process in the garnishment proceedings instituted by the appellee herein. On the 21st day of October thereafter, the Armstrong Brothers' garnishment was amicably adjusted, and the bank paid them, on McCrory's order, per said adjustment the sum of $892.55, and then had remaining in its possession the sum of $920.03, belonging to McCrory, or the holders of said orders. Some time thereafter it delivered the cashier's checks to the three parties named, and later paid in cash the amounts called for by said checks to the several parties. The trial court, after hearing the evidence, found the facts substantially as above stated, and concluded as a matter of law, that the garnishee was liable to the appellee for the full amount of the judgment theretofore rendered against the principal defendant, McCrory. Judgment was entered thereon, from which the garnishee defendant appeals.

Appellant first complains, that the judgment is excessive, because it had theretofore paid into the hands of the clerk of the court, when it filed its answer the sum of $228.70, which was the amount it admitted owing McCrory, and that the court failed to take into account the payment so made when it entered the judgment. There is no merit in this contention, however, as appellee can protect itself by paying to the clerk in satisfaction of the judgment, the difference between the amount theretofore paid the clerk and the amount of the judgment.

Appellant's principal contention is that the orders operated as assignments of the funds in the hands of the

bank to the holders of such checks or orders, consequently
at the time it was served with process it had in its hands
only the sum of $228.70 of the money of the defendant
McCrory.  The solution of this question depends upon
whether such orders are negotiable instruments, for if
they are, they did not operate as assignments of any part
of the funds to the credit of McCrory with the bank.  Sec-
tions 127 and 189, Chap. 83, S. L. 1907.

The bank contends they were not negotiable, because
they were payable out of a particular fund, by reason of
the direction "and charge the same against the ($2,000.00)
two thousand dollar insurance draft issued by Dora Alex-
ander of the Woodmen Circle in my favor, the same be-
ing the balance of my account with him," contained in
each of said orders.

It is an elementary and well settled rule of the law
merchant that an order for payment out of a particular
fund is not a negotiable instrument.  It is likewise
equally well settled, that the inclusion in a check, or-
der or bill of exchange of a direction to charge the
amount of the check, order or bill of exchange to a par-
ticular account, does not make it payable conditionally
or out of a particular fund; and therefore, it is payable
absolutely and is negotiable, and does not constitute an
assignment of a particular fund; or a part of a particular
fund.  First National Bank vs. Lightner, 74 Kan. 736;
11 Am. and Eng. Ann. Cas, 596, 8 L. R. A. (N. S.) 231.
And see also note to Hays vs. Lapeyre, 35 L. R. A. 647.
Independent of judicial construction, this rule is estab-
lished by Sec. 3, Chap. 83, S. L. 1907, which reads as
follows:

"An unqualified order or promise to pay is uncondi-
tional within the meaning of this act, though coupled
with:

"1. An indication of a particular fund out of which re-
imbursement is to be made, or a particular account to be
debited with amount; or

"2. A statement of the transaction which gives rise to

the instrument. But an order or promise to pay out of a particular fund not unconditional."

While the foregoing section of the act, is but a re-statement of the rule theretofore adhered to by the majority of the courts of the country, it had not always been uniformly followed as the case notes above referred to will show. It was to remove all doubt arising from the conflict of authority, and to establish a rule that the section was incorporated into the Negotiable Instruments Act. Under the section above quoted the orders in question were unconditional, negotiable, and did not constitute an assignment of a particular fund, or a part of a particular fund. By the orders, the cashier of the appellant bank was directed to pay the amounts therein named, and to debit the amount of the payment against the named account; hence there is no room for judicial construction, as the effect of the direction is controlled by the statute.

Appellant contends, however, that the acts of its cashier in stamping said orders "paid" and making out the cashier's checks constituted, either (1) a payment of the orders, or (2) an acceptance thereof, and, in either event it was discharged from liability to the garnishor herein. If either ground is well taken, the conclusion would necessarily follow, for, if the bank either paid, or accepted said orders, at the time of the presentation thereof, it would not have been indebted to McCrory for such amounts at the time it was served with process herein.

As to the first proposition, it must be apparent that the mere stamping of the word "paid" on said orders or checks, in and of itself amounted to nothing, and did not constitute payment. The payment could only be made by delivery of the actual cash, or an adjustment of accounts by agreement of the parties so that the bank would be obligated to the holders of the checks. In other words, "to constitute a payment, money or some other valuable thing must be delivered by the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose. 18 Am. & Eng. Enc. Law, p. 150.

The act of the cashier, in executing the cashier's checks, did not amount to payment. If he had delivered the checks, and the parties had accepted them as payment, a different question would be presented. But this was not done. The essential element lacking, to constitute a completed payment, was the delivery of the cashier's checks, and their acceptance by the holders of the orders.

"Delivery is the final step necessary to perfect the existence of any written contract, and therefore as long as a bill or note remains in the hands of the drawer or maker it is a nullity." Daniels on Negotiable Instruments (6th Ed.) Sec. 63.

And following the rule of the general law, the statute declares a contract on a negotiable instrument incomplete until delivery. (Sec. 16, Chap. 83, S. L. 1907.) Hence, it necessarily follows that the bank incurred no liability on the cashier's checks, so executed by its cashier, because of their non-delivery. In fact, the retention of the checks by the bank was for the very purpose of escaping liability. At the time of their presentation it had been garnisheed in another suit, and, as this action was still pending and undetermined, it did not know whether it would eventually have in its hands sufficient funds, belonging to McCrory, to liquidate the checks. The fact that the payees consented to the retention of the cashier's checks by the bank, does not alter the case. The checks were retained by the bank for the purpose of avoiding liability; hence their retention with the consent of the payees could not be regarded as a constructive delivery. If it could be so regarded, the very purpose of the detention would have been defeated. Both the findings and the evidence negative delivery or intention to deliver. It is true the eleventh finding of fact, requested by the appellant and adopted by the court, seems to be contradictory to other findings made by the court of its own motion. All the findings, however, must be construed together, and conflicting and contradictory findings reconciled, when it can be reasonably done. Stohr vs. Stohr (Cal.), 82 Pac. 777; Heaton-Hobson Associated Law Offices vs. Arper (Cal.), 78 Pac. 721.

Passing now to a consideration of the second question, viz; did the acts of the cashier constitute an acceptance of the bills of exchange? Section 132, Chapter 83, S. L. 1907, provides:

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than .the payment of money."

The statute providing that the acceptance must be in writing, it necessarily follows that an oral acceptance would not be binding upon the bank; and the most that can be said of the transaction between the cashier of appellant and the holders of the checks ·is, that it amounted to an oral, conditional acceptance.

In the case of Sheets vs. Coast Coal Co., 133 Pac. 433, the Supreme Court of Washington says: .

"The manner in which the drawee may bind himself to pay such an order is limited by the provisions of Secs. 3517 and 3522, Rem. & Bal. Code, as follows:"

The sections quoted by the court are identical with Sections 127 and 132 of our Negotiable Instruments Law. After reciting the sections the court proceeds:

"These provisions of our statute have been noticed and given the effect by this court in the following cases: Nelson vs. Nelson Bennett Co., 31 Wash. 116, 71 Pac. 749; Washams vs. Portland etc. R. Co., 37 Wash. 86, 69 Pac. 597; Frederick and Nelson vs. Spokane Grain Co., 47 Wash 85, 91 Pac. 570.

"No evidence whatever of an acceptance of these orders in writing by the coal company was introduced. It follows that the appellant cannot recover from the coal company upon the theory of his complaint."

In the case of B. & O. R. Co. vs. First National Bank, 102 Va. 753, 47 S. E. 837, it was held, under Section 132 of the Negotiable Instruments Law of that state, which is identical with the same section in force in this state, that the acceptance of a check must be in writing, and that the drawee is not liable to the holder unless and

until it certifies such check. See also Ballen & Friedman vs. Bank of Krenlin (Okla.), 130 Pac. 539. And the drawee of a bill of exchange is not liable on the bill unless and until he accepts it. Rambo et al. vs. First State Bank of Argentine (Kan.), 128 Pac. 182; and the acceptance must be in writing, and signed as the statute requires, Faircloth-Byrd Mercantile Co. (Ala.), 59 Southern 419; Izzo vs. Luddington, 79 N. Y. S. 744.

The making out and signing the cashier's checks by the cashier of the bank did not amount to a written acceptance of the orders, nor was it the intention of the appellant that it should. The bank was desirous of escaping the liability which would accrue by an acceptance.

"The making of a check, and having the same certified by a bank, passes no title to the funds on which the check is drawn to the person named as payee of the check. Until the check is delivered, no right accrues by virtue thereof to the payee." Buehler vs. Gait, 36 Ill. App. 225.

As has been stated, all that can be said of the transaction between the appellant and the holders of the bills was, that there was a verbal promise made by the bank to pay the orders, when the Armstrong attachment was adjusted, if sufficient funds remained to the credit of McCrory. The agreement to pay, not being in writing as required by the statute, was not binding upon the bank; consequently, at the time it was served with process in this suit it had, to the credit of McCrory, the moneys in question. The agreement to pay, not being in writing as required by the statute, was not binding upon the bank; consequently, at the time it was served with process in this suit it had, to the credit of McCrory, subject to garnishment, over $900.00. The bank could have protected itself by bringing in the holders of the bills, as parties to the suit. Having elected to pay the bills, it assumed the risk of being required to answer for the full amount claimed by the garnishor in the pending suit, and must abide the consequences.

The judgment of the district court will be affirmed, and it is so ordered.