427 P.2d 744

**STATE BANK OF SOUTHERN UTAH, a corporation, Plaintiff and Respondent,**

**v.**

**Thomas A. STALLINGS, dba Allyn Electric, and Ruth A. Stallings, Defendants, Hurricane Branch of the Bank of St. George, Garnishee;**

**T. E. Kaze and Max Gammon, dba Kaze & Gammon Construction Company, Intervenors and Appellants.**

**No. 10782.**

Supreme Court of Utah.

May 10, 1967.

· Aldrich, Bullock & Nelson, Clair M. Aldrich, Provo, for appellants.

Durham Morris, Cedar City, for respondent.

ELLETT, Justice:

The appellants as general contractors constructed a public school building. The defendant, Thomas A. Stallings was the electrical subcontractor and bought his merchandise from Westinghouse Supply Company. He owed Westinghouse some $8,000, $2,200 of which was past due.

Appellants made out a check to Stallings in the amount of $2,250 and requested Stallings to endorse it so the appellants could take it to Westinghouse and apply it on the delinquent account. Stallings claimed that Westinghouse had requested only $2,200 and refused to endorse the check, whereupon appellants gave their check to Stallings to be deposited in Stallings' checking account in the Hurricane Branch of the Bank of St. George, Stallings then gave his own check made payable to Westinghouse in the amount of $2,200 to the appellants to deliver to Westinghouse.

The respondent, State Bank of Southern Utah, had a couple of judgments against Stallings, and before the Westinghouse check could pass through the clearing house, the respondent had placed two garnishments against the Stallings account in the Hurricane Branch Bank.

The appellants intervened by some means not here questioned in the two cases from which the garnishments were issued and now claim that the check from Stallings was an assignment of $2,200 of the bank account when and if the $2,250 check from the appellants was deposited.

The trial court allowed the intervention and then gave a summary judgment against the intervenor and a garnishee judgment against the Huricane Branch Bank of St. George. The appellants do not contend that the assignment of the $2,200 was made to them. They say it was an assignment out of the $2,250 given by them and was assigned to Westinghouse. They claim an interest by reason of the fact that unless Stallings pays Westinghouse, they as general contractors will have to pay the bill themselves.

If appellants are correct in their contention, then the trial court was in error in giving a garnishee judgment, and Westinghouse should be here doing the appealing in order to protect its rights. However, Westinghouse has made no intervention and is not a party to the proceedings in this court.

We do not think the giving of the check operated as an assignment in this case. Section 3-409 in Chapter 154 of Laws of Utah 1965 provides as follows:

(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

\*      \*      \*      \*      \*      \*

In the Idaho case of Kaesemeyer v. Smith, 22 Idaho 1, 123 P. 943, at page 947,

43 L.R.A.,N.S., 100, the court in speaking of a situation like the one before us said:

> The check given to Carscallen was a mere direction to the bank to pay a certain sum of money to the person named therein. By the giving of such check the amount of the same did not become the property of the payee of the check nor place such fund beyond the control of Smith. Until the check was presented to the bank, Smith could have countermanded its payment and could have given different directions for the disposition of the money remaining in the bank to his credit, and could even have personally demanded payment, and the bank could have been required to pay the same, and by so doing its indebtedness to Smith would have been discharged.

This court has heretofore spoken concerning what constituted an assignment. In the case of Milford State Bank v. Parrish et al., 88 Utah 235, 53 P.2d 72, the court said at page 238 of the Utah Reports, 53 P.2d at page 73:

> The evidence relating to this primary and controlling question is brief and free from conflict. The law as to what constitutes an equitable assignment is well settled. The application of the law and the facts is sometimes difficult.

In the case of Nickerson v. Hollet (National Bank of Goldendale, Intervener) 149 Wash. 646, 272 P. 53, Tolman, J.,

quotes the law and cites authority as follows:

> In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is done the transaction is an assignment; otherwise not. 5 C.J. 909.

> The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control it is fatal to the claim of the assignee, 5 C.J. 912. See, also, Hossack v. Graham, 20 Wash. 184, 55 P. 36.

In this case there can be no question but that Stallings had the power to stop payment on the check.

■ Of course, the assignor and the assignee may by agreement make an assignment by means of a check. See Merchants' National Bank of St. Paul v. State Bank, 172 Minn. 24, 214 N.W. 750; Slaughter v. First National Bank, Tex.Civ.App., 18 S.W. 2d 754. However, no such agreement was ever made by the parties to the alleged assignment. Stallings and Westinghouse never spoke to each other about the check. The appellants planned the transactions but did not foresee the consequences. Had they wished an assignment, they could have

taken the Stallings check to the bank and had it certified.

■ We feel sorry for appellants, but the law, like the north wind, cannot be altered to suit the needs of the mangy fleece. We hold that there was no assignment of the $2,200 represented by the Stallings check and that the garnishment being served before the check was presented for payment gives priority to the garnishment. See Commercial Bank of Tacoma v. Chilberg et al., 14 Wash. 247, 44 P. 264.

The judgment of the lower court is affirmed with costs to the respondent.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent for a very simple reason: That the main opinion seems to imply that once there is a writ of garnishment issued, it has the effect of an automatic, conclusive and irrevocable assignment to the writer, irrespective of whether his claim is valid, as against valid, equitable,—or legal claims, if you please.

The writ is to isolate the funds, not necessarily to grant substantive rights.

Garnishment proceedings simply tie up money allegedly due to someone until the rights of defendant *and third parties* are determined. It is not a quiet title action that estops those having recorded or unrecorded interests in the fund, to which such interests must succumb.

The main opinion's citation of the N. I. L. is not impressive, since the law merchant has absolutely nothing to do with rights of people who claim an interest in garnishment proceedings, which, in turn, have nothing to do with the N. I. L. A simple example illustrating the fallacy of the main opinion's reasoning and conclusion would be a perfectly valid assignment of the fund prior to the garnishment, which the garnishee has doubts as to whether he should honor. There is no reason why the court could not, in a proper case, conclude that such assignment was good,—and such reasoning extends both to legal and equitable claims. Also, there is no reason why such a claim or interest cannot be asserted simply because a check evidencing it has not been deposited in a bank, honored, or paid.

This matter was determined on summary judgment. Evidence adduced might show an assignment having priority, or it may show no assignment at all,—but the facts should be established in a proper proceeding.