624 P.2d 511

**BANK OF NEW MEXICO, Petitioner,**

v.

**Joe PRIESTLEY and Charles Nuckols and Corona Ltd., a New Mexico Corporation, Respondents.**

**No. 13286.**

Supreme Court of New Mexico.

Feb. 20, 1981.

Rehearing Denied March 9, 1981.

Keleher & McLeod, Robert H. Clark, Michael Wile, Albuquerque, for petitioner.

Kool, Kool, Bloomfield & Eaves, William J. Darling, Albuquerque, Pickard & Singleton, Lynn Pickard, Santa Fe, for respondents.

## OPINION

FEDERICI, Justice.

Several suits were filed by the parties involving a controversy which arose over the sale of Carico Lake turquoise mine in Nevada. The mine was owned by the Carico Lake Mining Company (Carico). The suits were consolidated for trial. Third-party plaintiff (Roberts) owned an interest in Carico. He sold his interest to Corona Ltd., a New Mexico corporation (Corona), and to Joe Priestley and Charles Nuckols. Roberts was a judgment debtor of Bank of New Mexico (Bank) and when the Bank learned of the above sales contract it filed a garnishment proceeding against Corona, Priestley and Nuckols. Four days before filing an answer, counsel for Corona wrote Roberts that Corona was rescinding the sales contract. The letter was not signed by Priestley or Nuckols. Roberts responded by letter that he did not accept the rescission and expected full compliance. The garnishees then answered the complaint, denying any indebtedness to Roberts.

The trial court entered judgment for the Bank against Corona, Priestley and Nuckols, jointly and severally. The judgment included interest, costs and attorney fees. The Court of Appeals reversed the judgment in favor of the Bank against Priestley and Nuckols on their individual liability on the sales contract and promissory note. *Bank of New Mexico v. Northwest Power Products, Inc., et al.,* 19 N.M.St.B.Bull. 900 (1980). The Court of Appeals also reversed the trial court for its failure to award to the garnishees reasonable attorney fees. The opinion of the Court of Appeals consists of Subparts A through F. Review of a petition for writ of certiorari was granted by this Court. It involves only Subparts A, B and F of the Court of Appeals' opinion. We reverse the Court of Appeals as to Subparts A, B and F (Issues I, II and III herein).

The issues on certiorari are:

(1) Whether the Court of Appeals erred in holding that Nuckols and Priestley, who were signatories to a purchase agreement in their individual capacities, were not parties to that agreement and therefore not liable individually.

(2) Whether the Court of Appeals erred in holding that the obligations of Nuckols and Priestley had been properly rescinded pursuant to the purchase agreement.

(3) Whether the Court of Appeals erred in holding that Section 35–12–16(B), N.M.S. A.1978, requires that a garnishee be awarded attorney fees for appeal.

I.

The sales agreement provides, in pertinent part:

Agreement executed this 18th day of February, 1977, between JOE W. ROBERTS and JANICE E. ROBERTS, his wife, hereinafter referred to as "ROBERTS" and CORONA LTD., a New Mexico corporation, hereinafter referred to as "CORONA", and JOE W. PRIESTLEY and CHARLES E. NUCKOLS, hereinafter referred to as "P–N".

. . . . .

2. ROBERTS are willing to sell their fifty percent (50%) partnership interest to CORONA for One Hundred Thirty Two Thousand Five Hundred Ninety-five Dollars and Six Cents ($132,595.06) payable Ten Thousand Dollars ($10,000.00) upon execution of this Agreement.... Said obligation shall be represented by a promissory note payable to ROBERTS and shall bear *individual guarantees of P–N*. A copy of said promissory note is attached hereto as Exhibit "B" and incorporated herein by reference. (Emphasis added.)

. . . . .

6. *The individual guarantees of the promissory note* by P–N shall become void under the following conditions: If within six (6) months from the date of this Agreement there shall be discovered a deficiency in accounts receivable and equipment inventory, or an overage in accounts payable, with a net diminution of assets to the extent of Five Thousand Dollars ($5,000.00), unless said deficiency shall be reimbursed by ROBERTS, within thirty (30) days written notice of same. (Emphasis added.)

. . . . .

13. Any notices required hereunder shall be mailed to the following addresses:

Joe W. Roberts and Janice E. Roberts
3121 Vermont, N.E.
Albuquerque, New Mexico 87110
Richard K. Mulvaney
P. O. Box 23
Crescent Valley, Nevada 89821
Joe W. Priestley
P. O. Box 8
Corrales, New Mexico 87048
Charles E. Nuckols
P. O. Box 3829
Albuquerque, New Mexico 87110

Corona Ltd.
P. O. Box 3829
Albuquerque, New Mexico 87110

The agreement was signed by Priestley and Nuckols individually without any qualifying language, and also by Priestley in his capacity as President of Corona.

The promissory note which was incorporated into the purchase agreement by reference provides, in pertinent part:

After date, as hereinafter set forth, for value received, I, we, or either of us, promise to pay to JOE W. ROBERTS and JANICE E. ROBERTS, his wife, at Albuquerque, New Mexico, the sum of One Hundred Twenty-two Thousand Five Hundred Ninety-five Dollars and Six Cents ($122,595.06) in manner following, that is to say: One Thousand Five Hundred Dollars ($1,500.00) on the 18th day of August, 1977, and One Thousand Five Hundred Dollars ($1,500.00) on the 18th day of each and every month thereafter until the entire balance hereof with the interest thereon, as hereinafter set forth, shall have been fully paid.

. . . . .

The makers reserve the right to pay two or more installments at any time.

_____
JOE. W. PRIESTLEY, individually

CORONA LTD.
a New Mexico
corporation

_____
CHARLES E. NUCKOLS, individually

By _____
JOE. W. PRIESTLEY,
President

The signatures of Priestley and Nuckols appear as makers. They are not qualified by the word "guarantor."

Four days before Corona filed its answer in the garnishment proceedings, Roberts received the following letter from Corona's counsel rescinding the purchase agreement and purporting to void the obligations of Nuckols and Priestley as obligors under the promissory note:

You are hereby notified that our client, Corona Ltd., a New Mexico corporation, hereby rescinds that purchase agreement dated February 18, 1977, whereby Corona Ltd. agreed to purchase from you your partnership interest in Carico Lake Mining Company. Demand is also made on you for return of the TEN THOUSAND DOLLAR ($10,000.00) down payment. The reason for this rescission is as follows:

1. You have made sales of turquoise to former Carico Lake customers in violation of Paragraph 4.j of the Agreement.

2. In connection with the sale of your partnership interest, you grossly mis-

represented the amount of the turquoise reserves which are located at the mining claims of Carico Lake Mining Company.

3. There are major discrepancies in the accounts payable and accounts receivable for an estimated diminution in the assets of the corporation of at least $7,447.96. (In accordance with Paragraph 6 of the Agreement, the personal guarantees of Joe Priestley and Charles Nuckols on the promissory note are hereby declared to be void.)

4. There is failure of consideration for the reason that Richard K. Mulvaney has not, and continues to refuse to accept Corona Ltd., as a partner.

5. In connection with the sale of your partnership interest to Corona Ltd., you violated the Federal Securities Act of 1933, the Securities and Exchange Act of 1934, the Rules and Regulations promulgated thereunder, and the Securities Act of New Mexico.

For these and other reasons, Corona, Ltd., hereby returns to you your partnership interest in Carcio Lake Mining Company, demands full refund of the TEN THOUSAND DOLLAR ($10,000.00) down payment repudiates the promissory note executed in connection with the purchase agreement, and makes demand upon you for such other damages as may be provided by law in an additional amount of Ten Thousand Dollars ($10,000.00).

Upon receipt of this letter, Roberts responded with a letter to the effect that he did not accept the rescission and that he expected full compliance with the purchase agreement by Corona, Nuckols and Priestley.

The Court of Appeals states as its basis for nonpersonal liability of Priestley and Nuckols that: (1) Roberts had no claim against Priestley and Nuckols unless Roberts pierced the corporate veil of Corona; and (2) Priestley and Nuckols were not parties to the 1977 sales agreement and therefore not bound by its terms. These conclusions are erroneous.

■ There was no reason to pierce the corporate veil. Priestley and Nuckols were named as parties to the 1977 agreement in the preamble. They signed the agreement individually without any qualifying language following their signatures. The agreement provides that notices shall be sent to Priestley and Nuckols individually. Also in the promissory note which was incorporated into the purchase agreement by reference, the signatures of Priestley and Nuckols appear as follows: "Joe W. Priestley, individually" and "Charles E. Nuckols, individually." It is quite obvious that Priestley and Nuckols signed individually and not as officers for or on behalf of Corona and therefore the doctrine of piercing the corporate veil is not applicable. For an enlightening discussion of the law governing the doctrine of piercing the corporate veil, see *Scott Graphics, Inc. v. Mahaney*, 89 N.M. 208, 549 P.2d 623 (Ct.App. 1976), *cert. denied*, 89 N.M. 322, 551 P.2d 1369 (1976).

■ What we have stated above applies with equal force to the statement in the Court of Appeals' decision that Priestley and Nuckols were not parties to the 1977 sales agreement. They signed the agreement and the promissory note and are bound by the provisions and conditions contained in both. In *Mortgage Investment Co. v. Toone*, 17 Utah 2d 152, 153, 406 P.2d 30, 31 (1965), the court stated that where a person personally signs an agreement without indicating he is an agent acting for a principal, "[h]e is . . . personally bound by the contract which he signed in his individual capacity. (Citation omitted.)" *Cf. Barnes v. Sadler Assoc., Inc.*, 95 N.M. 334, 622 P.2d 239 (1981). This rule is applicable in the instant case.

## II.

With reference to the alleged rescission by Priestley and Nuckols, we note that the letter of rescission dated July 21, 1977 is written by the attorneys representing Corona and it gives notice of rescission *on behalf of Corona*. It does not state that notice of rescission is given on behalf of Priestley

and Nuckols, except as that might be inferred from the following parenthetical statement appearing in the letter: "(In accordance with Paragraph 6 of the Agreement, the personal guarantees of Joe Priestley and Charles Nuckols on the promissory note are hereby declared to be void.)"

■ The *notice requirement for voiding* the personal obligations of Priestley and Nuckols to Roberts appears in paragraph 13 of the agreement set forth above. It requires any party to send notice to all of the parties listed there. The only notice given which attempted to remove personal liability of Priestley and Nuckols was the notice from Corona's attorneys to Roberts, set forth above. Priestley and Nuckols, as parties to the agreement, were also required to comply with the notice provisions in the agreement. Priestley and Nuckols did not notify Roberts of the alleged discrepancy. The letter of July 21, 1977 may have been notice on behalf of Corona, but it was not notice from or on behalf of Priestley and Nuckols.

■ Even if notice was proper, the trial court found that no grounds existed to allow rescission. After an exhaustive and complicated trial, evidence before the court showed that there was a series of negotiations and deals concerning the Carico mine and other mining properties in which all of these parties and other parties were involved over a period of time. Serious rifts developed among the parties over management, inventory and participation in the properties, which resulted in hard feelings and even eviction of Priestley and Nuckols from certain Albuquerque premises. On the issue of rescission, the court specifically found that:

(11) .... In attempting to rescind the Agreement and void the guaranties Corona, Priestley and Nuckols did not comply with appropriate provisions in the Agreement.

. . . . .

(13) The Court finds that Roberts did not breach the Agreement of February 18, 1977 and that there do not exist grounds to rescind that Agreement.

(14) Roberts made no material misrepresentations with respect to the financial conditions of the business, the equipment owned by the business or validity of the accounts receivable of the business.

(15) Roberts made no material misrepresentations with respect to the quality or quantity of minerals located in the mine. In addition, it was specifically agreed among the parties to the contract of February 18, 1977, that Roberts made no representation or warranty as to the grade, quality or amount of turquoise in the mine.

(16) Priestley, Nuckols and Corona were given a full and complete opportunity to investigate the mine, its reserves, its value, and the value of the business prior to purchasing.

(17) Priestley, Nuckols and Corona did in fact make such investigation as they deemed appropriate prior to purchasing.

. . . . .

(20) Although there was some discrepancy between the list of accounts payable attached to the Agreement of February 18, 1977 and those that actually existed, Roberts made no material misrepresentation as to the extent of accounts payable. In addition, Roberts did not receive proper credit for the funds he provided to make the February payment on the Mays note. Other adjustments due Roberts were not made and accordingly the Court finds that Corona, Priestley and Nuckols did not suffer any loss over the amount of accounts payable they assumed when purchasing the Roberts interest in the business. Roberts were never properly notified pursuant to the terms of the Contract of any alleged discrepancies.

(21) The Court finds that there existed no significant deficiency in accounts receivable, equipment, inventory or an overage in accounts payable under Paragraph 6 of the Agreement dated February 18, 1977. Accordingly, there was no net diminution of the assets purchased by Corona and therefore the individual guaranties of Priestley and Nuckols are not void or voidable.

Based primarily upon the above findings the trial court concluded that Corona, Priestley and Nuckols were not entitled to rescind the 1977 sales contract; that Priestley and Nuckols are liable to the full extent of the balance of the 1977 agreement; and that Priestley and Nuckols are not released from liability under Paragraph 6 of the agreement. We agree.

We have reviewed the voluminous record of proceedings and evidence and we are convinced that there is substantial evidence to support the findings of fact made by the trial court. *Samples v. Robinson*, 58 N.M. 701, 275 P.2d 185 (1954) stated the rule that rescission is not available where a breach of contract is not so substantial and fundamental as to defeat the object of the parties in making the contract. Based upon its findings, the trial court was correct in concluding that rescission was not available for the parties here.

### III.

■ The Court of Appeals awarded costs and attorney fees to garnishees for the trial and appeal. Authority for awarding garnishee's costs and attorney fees is found in Section 35–12–16(B), N.M.S.A. 1978. It reads:

B. If the garnishee answers as required by law, the court shall award the garnishee his actual costs and a reasonable attorney fee. The award shall be against the defendant if the plaintiff prevails and against the plaintiff if the garnishee prevails.

The purpose of a statute such as this is to place the costs of litigation upon the party who should in fairness pay for causing the garnishee to appear in court. Thus, the garnishee *must* be awarded actual costs and a reasonable attorney fee for answering as required by law. Does the statute cover only the filing of an answer or does it include controverted proceedings in the trial court and on appeal? We interpret "answer" to include the garnishee's answer and appearance in both the trial court and appellate court or courts. *See Mendoza v. Acme Transfer & Storage Co.*, 66 N.M. 32,

340 P.2d 1080 (1959). *See also Lincoln Loan Service v. Motor Credit Co.*, 83 A.2d 332 (Ct.App.D.C.1951); *Bolten v. Colburn*, 389 S.W.2d 384 (Mo.App.1965). However, any such award of costs and attorney fees is limited to those matters fairly and necessarily litigated as a direct result of the garnishment proceeding. *See* 38 C.J.S. *Garnishment* § 264 (1943). Here, matters were litigated which were beyond the scope of the garnishment proceeding itself. Garnishees litigated contract issues contravening assertions made by both the Bank and Roberts.

■ The garnishees here are entitled to an award of costs and reasonable attorney fees for filing the answer to the garnishment complaint in the trial court. Any other award of actual costs and attorney fees, if any, is limited to those matters fairly and necessarily litigated as a direct result of the garnishment proceedings. These fees shall be assessed against the defendant Roberts because the Bank has prevailed. This issue is remanded to the trial court for a determination of costs at the trial level, and attorney fees if any, at both the trial and appellate level to be awarded Priestley and Nuckols in accordance with this opinion.

The cause is remanded to the trial court for further proceedings consistent with this opinion and those portions of the opinion of the Court of Appeals not addressed by this Court on certiorari.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE and RIORDAN, JJ., concur.

SOSA, Senior Justice, not participating.