## The FIRST NATIONAL BANK OF BOSTON and Casco Northern Bank, N.A.

### v.

## NEW ENGLAND SALES, INC., et al.

Supreme Judicial Court of Maine.

Argued March 18, 1993.
Decided Aug. 13, 1993.

---

William J. Kayatta, Jr. (orally), David E. Barry, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiffs.

John S. Campbell (orally), Richard E. Poulos, Poulos & Campbell, P.A., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

PER CURIAM.

This appeal from a Superior Court order (Cumberland County, *Lipez, J.*) is ancillary to a lender liability action brought by New England Sales, Inc., Diversified Foods, Inc., and Ronald Giguere (collectively the "Borrowers") against The First National Bank of Boston and Casco Northern Bank, N.A. (the "Banks"), and a separate action brought by the Banks against the Borrowers, seeking to collect debts due to them. The two actions were consolidated.[1] Early in the litigation, the Banks obtained an *ex parte* order permitting trustee process against certain property of the Borrowers. This appeal is brought by the adjudged trustees of that property, namely, Poulos, Campbell & Zendzian, P.A., a professional corporation (the "Corporation"), and Poulos, Campbell & Zendzian, a partnership (the "Partnership").

The issue that divides the court is whether funds held by the adjudged trustees are the proper subject of trustee process. 14 M.R.S.A. § 2602(4) (1980). Three members of the court agree with the contention of the Partnership and the Corporation that the agreement between them and the Borrowers created a pledge and the property held by them was not subject to trustee process. Three members of the court would hold that the Superior Court had competent evidence on which to base its finding that the funds were advanced payments "kept in trust by the law firm for the client" subject to attachment by trustee process.

A further contention of both the Corporation and the Partnership is that the court erred in finding that they had a duty to stop payment on a check that was issued to Ronald Giguere before service of the trustee summons. The Corporation, on the morning of August 29, 1989, issued a check of approximately $34,000 payable to Ronald Giguere in repayment of money he advanced for legal fees. The check was delivered to him prior to service of trustee process that day, but the check was not negoti-

---

1. This is the third time the consolidated action has been brought before us. *See Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d 609 (Me.1992); *Casco Northern Bank, N.A. v. New England Sales, Inc.,* 573 A.2d 795 (Me. 1990).

ated until two days after service. We review for error of law and on this issue are *unanimous.*

█ The proper issuance and delivery of a check to a payee creates an implied agreement that the check will be honored when presented, and no duty arises for the trustee to stop payment on the check for the benefit of the plaintiff. *See Frickleton v. Fulton,* 626 S.W.2d 402, 407 (Mo.Ct.App. 1981) (reaffirming principle that garnishee is not under a duty to stop payment on a check for the garnishing plaintiff); *Togs, Inc. v. Gordon,* 127 Ga.App. 520, 194 S.E.2d 280, 280 (1972) (finding that a check properly mailed and delivered to payee is not subject to garnishment). No question exists that the Corporation delivered the check in repayment prior to service of trustee summons. The funds represented by the check were not subject to trustee process. *See* 14 M.R.S.A. § 2602(1). Consequently, the court erred in finding that the Corporation was under a duty to stop payment and that the amount of the check was subject to trustee process.

The entry is:

Judgment affirmed by an evenly divided court, modified in accordance with the opinion herein to reduce the determination of property subject to trustee process by the amount of the check delivered prior to service of trustee summons.

All concurring.