1998-NMCA-096

963 P.2d 515

**CENTRAL SECURITY & ALARM COMPANY, INC., and Precision Security Alarm Corporation, Plaintiffs/Appellees/Cross–Appellants,**

v.

**Lee J. MEHLER, et al., Defendants,**

**Dean Witter Reynolds, Inc., Garnishee/Appellant/Cross–Appellee.**

**Nos. 17167, 17599.**

Court of Appeals of New Mexico.

April 3, 1998.

Certiorari Denied July 1, 1998.

Steven Schmidt, Singer, Smith & Williams, P.A., Albuquerque, for Appellees/Cross–Appellants.

**440**

John G. Baugh, Clark Varnell, Eaves, Bardacke & Baugh, P.A., Albuquerque, for Appellant/Cross–Appellee.

## OPINION [1]

WECHSLER, Judge.

{1} This is a garnishment case. Central Security and Alarm Company, Inc. (Central Security) filed a writ of garnishment against Dean Witter. Dean Witter answered, asserting that at the time it was served, it only held $930 belonging to the judgment debtor. Central Security argued to the trial court that Dean Witter owed more than that amount to satisfy the writ because Dean Witter had a duty to stop payment on checks which Dean Witter had issued one day prior to service of the writ of garnishment. The trial court rejected that argument and awarded Central Security the $930. The trial court denied Dean Witter's motion for attorney fees.

{2} Dean Witter appealed the order denying its motion for attorney fees. Central Security cross-appealed the denial of its motion for summary judgment. We consider on appeal whether a garnishee has a duty to stop payment on checks issued and delivered to discharge a debt prior to service of the writ of garnishment. We also decide whether the garnishee is a prevailing party and entitled to claim attorney fees under the garnishment statute. We affirm the trial court's decision with respect to the merits of the writ of garnishment. We reverse the trial court's decision on attorney fees and remand to the trial court for a hearing on that issue.

### Background

{3} In 1994, Central Security obtained a judgment against Lee Mehler. In aid of execution of its judgment, Central Security deposed Mehler's wife, Shari Lynn Tucker–Mehler, on March 1, 1995. During the deposition, Tucker–Mehler disclosed that she had very recently opened three investment accounts with Dean Witter's Santa Ana, California office, depositing $280,000 into the accounts. At the deposition, Tucker–Mehler refused to promise Central Security's attorney that she would not remove the funds from the accounts. On March 2, 1995, she withdrew nearly all of the money from her accounts at the Dean Witter office in Las Vegas, Nevada. To effect this withdrawal, Dean Witter delivered to Tucker–Mehler four checks totaling $234,528.38, including checks payable to Tucker–Mehler, Mehler, and the Internal Revenue Service, drawn on Dean Witter's account at the Bank of America in California. That same afternoon, Central Security applied for a writ of garnishment naming Dean Witter as garnishee. It served the writ on Dean Witter's Albuquerque office on Friday, March 3, 1995. The checks began to clear the drawee bank on the next business day, Monday, March 6, 1995. Dean Witter answered the writ of garnishment on March 14, 1995, stating that Tucker–Mehler's accounts held a total of $930.

{4} Over the course of the next few months, the parties filed cross-motions for summary judgment and responses. Dean Witter argued that Central Security had failed to controvert its answer to the writ of garnishment and, therefore, the trial court was required to enter judgment in Central Security's favor for the money remaining in the accounts under NMSA 1978, Section 35–12–4(C) (1969) (if garnishee answers that it was in possession of personal property of the defendant, the trial judge shall render judgment for the plaintiff against the garnishee for the amount admitted). Dean Witter also argued that it was not under any duty to stop payment on the checks it had written and issued to Tucker–Mehler before it was served with the writ of garnishment. Finally, Dean Witter argued that Tucker–Mehler was not a judgment debtor, an issue which we need not address because of our disposition of the case.

---

**1.** On March 5, 1998, this Court filed its opinion in this case. On March 20, 1998, Central Security and Alarm Company (Central Security) filed a motion for rehearing. We hereby deny Central Security's motion, but we withdraw our opinion of March 5, 1998, and substitute this opinion in its place.

{5} Central Security, on the other hand, claimed that it served the writ of garnishment before Dean Witter lost control over the funds in Tucker–Mehler's accounts. Central Security pointed out that the drawee bank did not honor two of the checks delivered to Tucker–Mehler until March 6, 1995, and therefore, the monies represented by the two checks were in Dean Witter's control on the date that it received service of the writ of garnishment.

{6} The trial court originally indicated that it would grant Central Security's motion for summary judgment, but would entertain a motion for reconsideration. Dean Witter filed a motion for reconsideration which included evidence that the four checks had been delivered to Tucker–Mehler one day prior to Central Security serving the writ of garnishment. On January 5, 1996, the trial court granted Dean Witter's motion for reconsideration and entered summary judgment in favor of Dean Witter. It denied Central Security's motion for summary judgment and awarded Central Security $930.

{7} Dean Witter filed a motion for attorney fees in the amount of $57,859.71 on January 19, 1996. It claimed that it was the prevailing party and was entitled to have its fees paid by Central Security. *See* NMSA 1978, § 35–12–16(B) (1977) (if garnishee answers as required by law, the court shall award costs and reasonable attorney fees to be paid by the plaintiff if the garnishee prevails). Central Security argued that Dean Witter could not be considered a prevailing party because Central Security had recovered $930 under the garnishment writ. On May 20, 1996, the trial court denied Dean Witter's motion for attorney fees without explanation.

*Duty to Stop Payment*

{8} Central Security argues that Dean Witter had a duty to stop payment on the checks issued to Tucker–Mehler or face liability for the amounts of those checks. *See* NMSA 1978, § 55–4–403(a) (1992) (bank customer may stop payment on check drawn on account). Central Security claims that because all of the checks had not cleared the bank, Dean Witter maintained control over the monies in the checking accounts and could have directed its bank to stop payment on the checks that had been delivered to Tucker–Mehler. *See* NMSA 1978, § 35–12–3(A) (1969) (service of garnishment attaches property of judgment debtor in garnishee's possession or control).

{9} Central Security relies on garnishment case law in which the bank of the judgment debtor was the garnishee. *See Gelco Corp. v. United Nat'l Bank,* 569 So.2d 502, 503–04 (Fla.Dist.Ct.App.1990); *State Bank v. Stallings,* 19 Utah 2d 146, 427 P.2d 744, 746 (1967). These cases hold that if a writ of garnishment is served on a garnishee bank before a check written on the account by a drawer is presented for payment, the garnishee bank must honor the writ and refuse to pay on the check. *See Gelco Corp.,* 569 So.2d at 503; *Stallings,* 427 P.2d at 746. The rationale for this duty is two-fold. First, when a judgment debtor's bank is the garnishee, the bank is still in control of the funds in the judgment debtor's account at the time that it receives the writ and the bank would have no knowledge if a check has been issued on the account until it is presented for payment. *See Gelco Corp.,* 569 So.2d at 503. Second, until a check is presented for payment, a drawer has power to stop payment over funds in the account. *See id.* at 504; *Stallings,* 427 P.2d at 745.

{10} This case presents a different situation. Here, the issue is whether Dean Witter as garnishee had a duty to stop payment on checks it had issued and delivered to Tucker–Mehler before Central Security's writ of garnishment was served on it. It is an issue of first impression for this Court. In this case, the garnishee is not the judgment debtor's bank, but a securities firm holding funds assertedly belonging to the judgment debtor. Once the garnishee has delivered a check, the only control a non-bank garnishee retains is over the ultimate payment of the check through the stop-payment mechanism. The control is not the same type of control exercised in the bank cases. Those cases involve the judgment debtor writing a check to a third party on an account in existence at the garnishee bank. In this case, Dean Witter issued and deliv-

ered checks written on its accounts at Bank of America. Once the checks left its possession, Dean Witter as garnishee would not know whether the payee cashed them at Bank of America or negotiated them to another holder in due course, receiving payment or other valuable consideration. If the nonbank garnishee stops payment, it is possible that disputes will ensue between the garnishee and holders in due course. If we were to require stop payment orders in response to writs of garnishment, we would place an unacceptable risk of loss or double liability on the garnishee, an innocent third party with no connection to the dispute between the judgment debtor and the garnishor.

{11} The weight of the authority supports this rationale. The general rule is that one who issues and delivers a check to a debtor and is then served with a writ of garnishment has no duty to stop payment on that check to satisfy the writ. *See Schwerdt, Grace & Niemackl v. Speedway Festivals, Inc.,* 7 Kan.App.2d 40, 637 P.2d 477, 481–83 (1981) (no duty on garnishee to stop payment on a check when it receives a garnishment order); *First Nat'l Bank v. New England Sales, Inc.,* 629 A.2d 1230, 1232 (Me.1993) (no duty arises for the trustee to stop payment on a check to benefit trustor); *Corrugated Indus., Inc. v. Chattanooga Glass Co.,* 317 So.2d 43, 45–47 (Miss.1975) (building owner under no duty to stop payment to a contractor when supplier serves notice under mechanic's lien statute); *Frickleton v. Fulton,* 626 S.W.2d 402, 407 (Mo.Ct.App.1981) (insurance company under no legal duty to stop payment when served with a writ of garnishment); *Parnell–Martin Supply Co. v. High Point Motor Lodge, Inc.,* 277 N.C. 312, 177 S.E.2d 392, 395–96 (1970) (insurance company under no legal duty to stop payment when served with writ of garnishment); *Pearson Grain Co. v. Plains Trucking Co.,* 494 S.W.2d 639, 641 (Tex.Civ.App.1973) (no duty to stop payment on check issued and delivered prior to service of writ of garnishment); *see also* 6 Am.Jur.2d *Attachment and Garnishment* § 517 (1963) (drawer of a check is under no duty to stop payment when garnished for the benefit of the garnishing plaintiff).

{12} The only case relied upon by Central Security that discusses this precise issue is *Huybrechts v. Huybrechts,* 4 Conn.App. 319, 494 A.2d 593, 594 (1985) It held the debtor liable for not stopping payment on a check already issued and delivered to discharge a debt, but not yet cleared through the debtor's bank. *See id.* The court indicated that a garnishee could avoid liability if it attempted to stop payment within a reasonable time, even if unsuccessful. *See id.* However, this holding appears to be the minority position.

{13} Jurisdictions adopting the majority rule acknowledge the potential exposure of a garnishee or a holder in due course to double liability of having to pay the garnishor yet remaining liable on the check or losing the ability to recover on the check. *See Frickleton,* 626 S.W.2d at 408 (check accepted by very act of issuing it; stop payment would not absolve drawer from liability to holder in due course). Indeed, in this case, Tucker–Mehler and Mehler endorsed and delivered three of the four checks from Dean Witter to First Interstate Bank, immediately after receiving the checks. These courts have reasoned that a garnishor can acquire no greater rights by a writ of garnishment than those that the judgment debtor would have been able to assert against the garnishee. *See Schwerdt,* 637 P.2d at 482 (if check had passed into hands of holder in due course, judgment debtor would have no further claim against garnishee); *Pearson,* 494 S.W.2d at 641 (garnishor acquires no greater right than judgment debtor would be able to assert against garnishee). This rationale avoids the problem of multiple exposure if a check has been negotiated before presentment. Different from *Huybrechts,* this reasoning is also helpful in that it establishes a bright-line rule for a garnishee's duty and liability. The garnishee's responsibility ends when it delivers a check to the judgment debtor. We believe that this rationale is sound.

{14} We note that Central Security also relies on a New Mexico Supreme Court case, *Hanna v. McCrory,* 19 N.M. 183, 141 P. 996 (1914). We do not find *Hanna* to be controlling authority as *Hanna* involved a factual

scenario quite different from that presented in this case. In *Hanna*, the garnishee bank executed checks before it was served with the writ of garnishment, but had not relinquished possession of the checks at the time the writ of garnishment was served. *See id.* at 187, 141 P. at 996. Subsequently, after service of the writ of garnishment, the garnishee delivered the checks. *See id.* The Court acknowledged that "if [the garnishee] had delivered the checks, and the parties had accepted them as payment, a different question would be presented." *Id.* at 190, 141 P. at 997. The Court held that execution of checks did not amount to payment, because completed payment required delivery. *See id.* at 192, 141 P. at 998.

{15} Alternatively, for the first time in its reply brief, Central Security argues that Section 35–12–3, in and of itself, controls in this garnishment proceeding, requiring reversal of the district court's judgment without analysis of the garnishee's duty. We need not address this argument. *See Villanueva v. Sunday Sch. Bd.*, 121 N.M. 98, 105, 908 P.2d 791, 798 (Ct.App.1995) ("[R]aising new issues in the reply brief, when it is too late for an appellee to respond to them, is insufficient to obtain a review of those issues."). Nonetheless, we do not share Central Security's concerns.

■ {16} Central Security claims that the service of the writ attached the judgment debtor's chose in action. It argues that since Dean Witter did not stop payment on the checks it had issued to Tucker–Mehler, Dean Witter is liable because, under the second sentence of Section 35–12–3(A), the checks were "converted into money after service of the garnishment."

{17} Central Security's argument fails for several reasons. When we read Section 35–12–3(A) as a whole it does not support Central Security's conclusion. *See Cox v. Hanlen*, 1998–NMCA–015, ¶ 9, 124 N.M. 529, 953 P.2d 294 ("When construing a statute, this Court will read the statute as a whole, construing each part in connection with the other parts to give effect to all provisions of the statute in a consistent manner."). The first sentence of Section 35–12–3(A) instructs the garnishee that upon receipt of a writ of garnishment, all personal property of the judgment debtor in garnishee's possession or control becomes attached. This property includes all tangible property, for example, cash, personal property, bonds, bill, notes, drafts, checks, and choses in action. The garnishee must deliver any of the judgment debtor's property it has in its possession at the time of the garnishment. The second sentence of Section 35–12–3(A), which includes the language focused on by Central Security, controls during the time after the garnishee is served and before it delivers possession to the garnishor or the magistrate. It applies if a non-cash asset is converted into money, for example, a bond matures. In such event, the garnishee must turn over the amount of money received instead of the asset. The garnishee no longer has possession of the non-cash asset.

■ {18} Additionally, a garnishee is an innocent third-party which by circumstances holds assets belonging to a judgment debtor. Section 35–12–3(A) serves to protect the garnishee's status. A garnishee simply has the duty to deliver all of the debtor's assets it holds as they exist to satisfy a garnishor's money judgment. Section 35–12–3(A) does not force a garnishee to convert all non-cash assets to cash prior to satisfying the writ. The garnishor has the responsibility to convert the assets to money as necessary. Here, Dean Witter did not hold any assets converted to money at the time of the service of the writ.

■ {19} Furthermore, Central Security misconstrues what is the garnished "chose in action." A "chose in action" is a debt owed to a debtor or a right of action of a debtor. *See* Black's Law Dictionary 241 (6th ed.1990). In this case, the chose in action is the right Tucker–Mehler could assert against Dean Witter for the funds belonging to Tucker–Mehler held by Dean Witter. At the time of service of the writ of garnishment on Dean Witter, Tucker–Mehler owned a chose in action for the funds remaining in Dean Witter's possession, $930. Central Security received this amount.

{20} In summary, we conclude that Section 35–12–3 is inapplicable to this case be-

cause Dean Witter had already relinquished possession and control of all of Tucker–Mehler's assets except the right to $930 prior to service of the writ of garnishment. Adopting the majority position, we decline to hold that Dean Witter had a duty to stop payment on the checks it issued and delivered to Tucker–Mehler before it received service of the writ.

*Attorney Fees*

{21}  Dean Witter filed a motion for attorney fees, requesting $57,859.71. Dean Witter claimed that it was a prevailing party and its fees should be paid by Central Security. After hearing argument from the parties, the trial court denied Dean Witter's motion for attorney fees, stating that each side should bear its own costs.

■ {22}  Our garnishment statute treats a garnishee as an innocent third party. "If the garnishee answers as required by law, the court shall award the garnishee his actual costs and a reasonable attorney fee." *See* § 35–12–16(B). Such an "answer" includes the answer pleading and appearance in both trial and appellate courts. *See Bank of New Mexico v. Priestley*, 95 N.M. 569, 575, 624 P.2d 511, 517 (1981). The garnishment statute places "the costs of litigation upon the party who should in fairness pay for causing the garnishee to appear in court." *Id.* If the plaintiff or the garnishor prevails, the defendant or judgment debtor pays the garnishee's costs. *See* § 35–12–16(B). If the garnishee prevails, the plaintiff garnishor bears that burden. *See id.*

{23}  Although there are no New Mexico cases discussing when a party has "prevailed" within the context of the garnishment statute, there are cases discussing the meaning of "prevailing party" in connection with payment of costs. For example, under Rule 1–054(E) NMRA 1998 there is a presumption that a prevailing party will receive an award of costs. *See Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 94, 898 P.2d 709, 729 (1995). Our Supreme Court has described a prevailing party as one " 'who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment.' " *Id.* at 95, 898 P.2d at 730 (quoting *Dunleavy v. Miller*, 116 N.M.

353, 360, 862 P.2d 1212, 1219 (1993)); *see Read v. Western Farm Bureau Mut. Ins. Co.*, 90 N.M. 369, 376, 563 P.2d 1162, 1169 (Ct.App.1977) (costs shall be allowed to party who wins lawsuit unless express provision stating otherwise is included in statute or rule). When judgment is in favor of a defendant who has moved for summary judgment, the defendant is a prevailing party. *See Marchman*, 120 N.M. at 95, 898 P.2d at 730.

{24}  In this case, Dean Witter filed an answer to the writ of garnishment which listed all accounts maintained for the benefit of Tucker–Mehler. The answer stated that, at the time of the writ, the accounts maintained balances of $450, $480, and zero. The answer indicated that the accounts which maintained balances of $450 and $480 had been blocked on March 6, 1995. At this point in the litigation, if it took no further action, Central Security had prevailed. It was entitled to judgment of $930 and Dean Witter was entitled to have its costs and attorney fees paid by Mehler, the judgment debtor defendant. *See* § 35–12–16(B).

■ {25}  However, Central Security charted a different course by controverting Dean Witter's answer to the writ of garnishment. As a result, it dramatically changed the nature of the litigation. Over the next several months, Dean Witter appeared in court to defend itself against Central Security's claim that Dean Witter had breached a duty to stop payment on checks which Dean Witter issued to Tucker–Mehler. The trial court accepted Dean Witter's argument that it was under no duty to stop payment on checks issued to Tucker–Mehler and granted Dean Witter's motion for summary judgment against Central Security. The trial court only awarded Central Security the total amount of funds which Dean Witter listed in its original answer subject to the writ of garnishment.

■ {26}  When considering who is the prevailing party, we view the proceedings in the context of the garnishment statute. Section 35–12–16(B) favors Dean Witter as a third-party garnishee performing an obligation to the court and the parties to the underlying litigation. Section 35–12–16(B)

does not contemplate that a garnishee pay its own costs and attorney fees "fairly and necessarily litigated as a direct result of the garnishment proceeding." *Bank of New Mexico,* 95 N.M. at 575, 624 P.2d at 517. Thus, when the garnishor proceeds with a writ of garnishment, it does so at the risk of bearing the costs and attorney fees of a prevailing garnishee.

{27} Central Security was unsuccessful in recovering judgment in its effort to collect on the checks issued to Tucker–Mehler. On the other hand, Dean Witter successfully avoided an adverse judgment which possibly would have required it to pay Central Security much more than the $930 which was already being held under the writ of garnishment. On the facts in this garnishment proceeding, Dean Witter prevailed. As Dean Witter incurred costs and attorney fees as a direct result of Central Security's position, Central Security has the obligation of paying Dean Witter's costs and fees which are related to matters fairly and necessarily litigated. *See id.*

{28} We reverse the trial court's order denying Dean Witter's motion for attorney fees. We decline Dean Witter's request that this Court fix the attorney fees at the trial level based on the record and remand to the trial court to determine the amount of attorney fees to be awarded to Dean Witter under Section 35–12–16(B).

*Costs and Attorney Fees on Appeal*

{29} Dean Witter requests an award of the costs and fees it has incurred on appeal. The party prevailing shall recover costs on appeal. *See* Rule 12–403(A) NMRA 1998. The recoverable costs include reasonable attorney fees when permitted by law. *See* Rule 12–403(B)(3). As we have discussed, Dean Witter has succeeded in defending against the cross-appeal, and in asserting its claim to attorney fees under the garnishment statute. We believe an award of $3000 is appropriate for Dean Witter's costs and attorney fees on appeal.

*Conclusion*

{30} For the reasons stated above, we hold that Dean Witter had no duty to stop payment on the checks it issued and delivered to Tucker–Mehler before the writ of garnishment was served. We affirm the trial court's decision on that issue. Further, we reverse the trial court's decision denying attorney fees to Dean Witter, and remand for a determination as to an appropriate award of such fees. Finally, we award Dean Witter $3000 for its appellate costs and attorney fees.

{31}  **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.

