**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 28, 2005**

**TENTH CIRCUIT**

SECURITIES & EXCHANGE
COMMISSION,

      Plaintiff,

v.

4NEXCHANGE, a Utah Limited Liability
Company; PAUL R. GRANT;
RONALD K. BASSETT,

      Defendants.

No. 03-4150
(D.C. No. 2:02-CV-431-DAK)
(D. Ct. Utah)

ROBERT G. WING,

      Receiver - Appellant,

v.

ROBERT & SUSAN COVINO,

      Intervenors - Appellees.

**ORDER AND JUDGMENT**[*]

Before **KELLY, HOLLOWAY** and **LUCERO**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

**I**

Mr. Robert G. Wing, the Appellant, is the receiver for the company 4NExchange, which was used in a Ponzi scheme. On May 2, 2002, the Securities and Exchange Commission (SEC) filed the underlying action against 4NExchange and immediately sought a temporary restraining order freezing the company's bank accounts, including its account at America First Credit Union. That TRO was issued by the district court the same day. The district court docket sheet shows that on May 13 a status conference was held. Following the conference, the TRO was extended with the agreement of the defendants. Mr. Wing's appointment as receiver followed on May 31, 2002.

The Appellees are Robert and Susan Covino. The Covinos, who were already investors in 4NExchange, borrowed almost $2 million just prior to the commencement of this action and increased dramatically the size of their investment. They obtained those borrowed funds, which are the subject of this appeal, in two checks. One check was in the amount of $650,000 and was issued by Commerce Bank. The second check was drawn on the trust account of the Covinos' attorney at Summit Bank (now Fleet Bank). The Covinos endorsed the checks and sent them by overnight courier to 4NExchange.

On April 27, 2002, the checks were endorsed by 4NExchange and deposited into the company's account at America First Credit Union. On May 1, 2002, the checks were presented to the drawee banks, Commerce and Fleet, through the Federal Reserve system.

On May 9, 2002, the Covinos' attorney first contacted the SEC and demanded return of the funds. When their demand was not met, the Covinos moved to intervene in the underlying action, seeking return of the proceeds of the two checks described above. The Receiver did not contest the Covinos' right to intervene to bring their claim, but he did challenge the claim for return of the funds on its merits. The Covinos asserted, as they do in this appeal, that the two checks at issue had not been finally paid and so were not properly funds of the company when the freeze order issued.

In its Memorandum Decision and Order Regarding Return of Funds, entered February 12, 2003, the district court agreed and ordered the funds to be returned to the Covinos. The Receiver filed a motion for reconsideration on February 24, 2003, which the district court denied in an order entered on May 30, 2003. This appeal by the receiver Wing followed.

## II

The district court had jurisdiction under 28 U.S.C. § 1331. The Receiver invokes 28 U.S.C. § 1292(a)(1) as granting jurisdiction in this court.[1] There is no dispute between the parties that the order of February 12 was in effect a modification of an injunction because it ordered the release of funds held under the previous freeze order.

The Receiver filed a motion in the district court to reconsider that order on February

_____

[1]That subsection generally grants jurisdiction to the courts of appeals over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."

16, 2002. It is well established that, in general, we will consider a motion filed within ten days of the entry of an appealable order as a motion under Fed. R. Civ. P. 59[2] and that the time for filing a notice of appeal is therefore tolled during the pendency of the motion in the district court as provided by Fed. R. App. P. 4(a)(4)(A). Therefore, we conclude that the notice of appeal was timely and that we have jurisdiction over this appeal.

## III

The first and primary issue raised on appeal by the Receiver is whether the district court erred in concluding that the deposits credited to the company account from the Investors' checks were merely provisional and therefore not subject to the freeze order entered on May 2, 2002.[3] The Receiver begins by conceding that the district court's analysis might be correct if the issue were controlled by the Utah Uniform Commercial Code. But,

---

[2]Although the motion was not filed within ten calendar days of the order from which the appeal is taken, under the counting rule of Fed. R. Civ. P. 6(a) the motion is considered to have been filed within ten days. Also, although the title of Rule 59, "New Trials; Amendment of Judgments," does not suggest its application to interlocutory orders, it does nevertheless apply to this order. For purposes of determination of appellate jurisdiction, *inter alia*, "judgment" is defined as an appealable order. Fed. R. Civ. P. 54(a). *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1418-19 & nn. 4-5 (9th Cir. 1984).

[3]The district court's holding was based on the view that credits in the company's account were not subject to the freeze order if the credits were only provisional, subject to revocation. The district court cited *DNI Nevada, Inc. v. Medi-Peth Med. Lab, Inc.*, 766 A.2d 1197 (N.J. App. Div. 2001); *Zucker v. United States Computer Corp.*, 408 N.E. 2d 41 (Ill. App. 1980); *State Bank of Southern Utah v. Stallings*, 427 P.2d 744 (Utah 1967); and *Anderson v. Stephens*, 875 F.2d 76 (4th Cir. 1989). The Receiver does not challenge this point on appeal, and accordingly we accept the district court's view for our purposes.

the Receiver contends, a federal banking regulation has preempted that aspect of the UCC. The Federal Reserve Board's Regulation CC, which took effect in 1988, provides that settlements between banks "for forward collection of a check are final when made . . . ." 12 C.F.R. § 229.36(d). Under another regulation, Fleet Bank and Commerce Bank were required to make settlement for the checks on May 1, 2002, and the effect of Regulation CC is to make those settlements final.

This is a legal question and review would be *de novo*, but for the fact that this issue was not properly preserved for appellate review. This specific legal theory, the only one argued on appeal that goes directly to the merits of the district court's decision, was not raised in the district court until the Receiver submitted a reply brief in support of his motion to reconsider. The district judge, in his discretion, declined to consider the argument. As the district judge noted, we have said that a motion for reconsideration is an

> inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. Absent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed.

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

In *Servants* we also set out the circumstances in which a motion to reconsider (although not recognized in the Federal Rules of Civil Procedure under that name) is proper. These include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* A

motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.' *Id.*

The district judge thus was merely following our pronouncements when he declined to consider the argument raised for the first time, not in the motion to reconsider itself, but in the reply brief supporting the motion to reconsider. Obviously there was no abuse of discretion in the district court's following our teachings on this point. Nor has the Receiver argued that the district court committed error that was "clear" or that "manifest injustice" has resulted. To the contrary, the Receiver has all but conceded that the district court interpreted the relevant provisions of the Utah Uniform Commercial Code correctly. The twelfth hour attempt to avoid the effect of the UCC by arguing preemption by federal regulation, uncited until after submissions were made and the ruling below was announced, does not raise concerns of clear error or manifest injustice.

We therefore decline to consider the Receiver's argument on preemption by Regulation CC because of the untimely manner in which it was raised in the district court.[4]

**IV**

---

[4]We have examined the issue on the merits enough to be able to say that if there is any error, it is certainly not clear error. The Covinos argue, with some force, that Regulation CC is not relevant because it applies only to the UCC concept of final "settlement" between banks, whereas the issue in this case is final "payment" that is binding on the maker of the check. They cite 6A *Hawkland Uniform Commercial Code Series*, § 4-215:5 (2002 update). We express no opinion on the merits of this issue.

The Receiver also contends that the district court relied on inadmissible hearsay in an affidavit submitted by Mr. Covino. The two key paragraphs that the Receiver moved to strike state:

> 5. Based upon my attorney's investigation, banking records reveal that the checks were deposited by 4NExchange in its account at America First Credit Union. The checks were presented to Commerce Bank and Fleet Bank, respectively, through the Federal Reserve system on May 1, 2002.

> 6. We are advised that according to applicable banking statutes and regulations, the aforesaid checks were not deemed "finally paid" until midnight on the day after they were presented (i.e. May 2, 2002). Until that time, Commerce Bank and Fleet Bank could have returned, dishonored, revoked settlement or stopped payment on the checks. Annexed hereto as Exhibit "B" is an Affidavit executed by Diane Payne, a supervisor in the Returns Department of Commerce Bank, confirming the foregoing.

Aplt. App. at 64. The Receiver argues that these statements are hearsay, or some of them are hearsay within hearsay, and so inadmissible. At oral argument, however, the Receiver conceded that the affidavit of the bank supervisor Payne, referenced in paragraph 6, *supra*, defeats his argument as to the Commerce Bank check for $650,000 and that his appellate challenge is thus limited to the check that was drawn on Fleet Bank for $1,337,623.60.

The district judge rejected this remaining argument, saying that the assertions at which the challenge was aimed were "objectively verifiable facts." Aplt. App. at 77. The judge noted that the affidavit referred to attached copies of the checks showing the processing marks. *Id.*

It seems that only one fact in the Covino affidavit is really at issue here: that the date that the Fleet Bank check was presented to that bank in the course of the collection process

was May 1, 2002.[5] The Receiver does not challenge the district court's observation that the targeted assertions were "objectively verifiable facts." The Receiver has never suggested that the actual date of presentment was not May 1, 2002. The district court's apt description of this as an objectively verifiable fact suggests that the court may have intended a reference to Fed. R. Evid. 807, often referred to as the residual exception to the hearsay rule. That rule provides that a statement which does not come within one of the specific exceptions to the hearsay rule, but "having equivalent circumstantial guarantees of trustworthiness," may be admitted

> if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The statement at issue here clearly meets the substantive requirements of being material and more probative than any other evidence on the point (it might be the only possible evidence on the point). We conclude that it also meets the preliminary requirement of "having equivalent circumstantial guarantees of trustworthiness." A bank stamp like this is

---

[5]The assertions in paragraph 6 of the affidavit, quoted *supra*, are mostly legal conclusions, as the Receiver argued below. But because the district judge drew the same conclusions, the affidavit's statements of the law may be ignored as mere surplusage at this stage.

commonly relied upon in every day financial matters. Finally, it seems clear to us that admission of the evidence advanced the general purposes of the Federal Rules of Evidence as expressed in Rule 102, "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

This leaves only the notice requirement of Rule 807. In this case, the notice was provided by the Covinos' motion to intervene. The affidavit was appended to the moving papers, and the Receiver had considerable time to prepare to meet the evidence. We feel there was substantial compliance with the notice requirement.[6] And we conclude that error, if any, was harmless in that admission of the evidence aided the court in achieving a just result, there appearing to be no substantial doubt that the fact was as the district court found it to be from the evidence.

**AFFIRMED**.

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge

---

[6]We have suggested that the notice must include notice of intent to rely on the residual exception to the hearsay rule. *See United States v. Zamora*, 784 F.2d 1025, 1031 (10th Cir. 1986). Here, however, neither the proponent of the evidence nor the judge made clear their reliance on the residual exception. Nevertheless, it is clear that the purpose of the notice requirement was satisfied because of the ample opportunity that the Receiver enjoyed to prepare to meet the evidence. In any event, as stated in the text, we believe that any error was harmless and that the result was just.